Isaac **DAVIS**

v.

**COFFEE CITY, TEXAS, et al.**

**Civ. A. No. 5453.**

United States District Court,
E. D. Texas,
Tyler Division.

Aug. 10, 1972.

Thomas W. Hathaway, Tyler, Tex., for plaintiff.

William H. Kugle, Jr., Athens, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

JUSTICE, District Judge.

This civil action arises out of plaintiff's frustrated attempt to open a retail store for the sale of alcoholic beverages in Coffee City, Texas.

Coffee City is a municipality with less than 250 inhabitants, located on State Highway No. 155 between Tyler and Frankston, Texas. Under the state local option laws, the inhabitants of Coffee City have legalized the sale of alcoholic beverages within the municipal boundaries. Since Coffee City is the only "wet" area within a ten to twenty mile radius, the package store operators within the city have a monopoly on the legal liquor market in the area. Indeed, the evidence showed that Kilo Drive-In, the principal package store, ideally located on Highway No. 155, grossed over $1,500,000.00 in 1971. The evidence further showed that for the same period of time the Wilbert Davis store, located off Highway No. 155 on Coffee Landing Road, grossed almost $400,000.00.

It is apparent that on January 24, 1972, the date of the action of the Board of Aldermen relevant to this law suit, the city was controlled by persons whose economic interest was intimately connected with the package store business in Coffee City. The principal package store, Kilo Drive-In, was jointly owned by Wayne Phillips, the mayor, and his brother, Paul Phillips, a member of the Board of Aldermen. Mary Phillips, the wife of Paul Phillips, was the City Secretary at the time in question. Wilbert Davis, another alderman, was the ostensible owner and operator of a liquor store on Coffee Landing Road. A third member of the Board of Aldermen, John Baker, testified that, although he had discontinued his alcoholic beverage business in September of 1971, he still held a beer and wine license for an establishment down the road from Wilbert Davis at the date pertinent to this action. The other two members of the Board, Joe Nathan Harmon and Thurman Harmon, did not own any interest in any of the stores, but Joe Harmon testified at trial of the case that his relative, George Harmon, has opened some type of alcoholic beverage establishment since the occurrence of the events made the subject of this civil action.

A further example of the control of the liquor interests of the city government is Ordinance No. 1, passed in January of 1970. Section V of the ordinance provides that no permit for the construction of a building to be used as a retail outlet for alcoholic beverages shall be issued by the city "unless the owner of such building shall have been a resident of the City of Coffee City, Texas, for not less than one (1) year prior to the filing of such application." Wilbert Davis freely admitted at the trial of the case that the purpose of this ordinance was to keep outsiders from participating in the lucrative alcoholic beverage trade. John Baker testified that the City Attorney at the time the ordinance was passed advised the Board of Aldermen that the ordinance might have the effect of keeping outsiders out of Coffee City for approximately a year, until the town was fully organized; but that after the passage of that period, the founding fathers might have to be more lenient in allowing others to come in.

In June of 1971, plaintiff, Isaac Davis, obtained a building permit for a package store to be located on Coffee Landing Road. On January 22, 1972, plaintiff, pursuant to the requirements of state law, submitted his application for state liquor and beer licenses to the City Secretary and requested her to execute the following certificate:

I, ———, City Secretary/Clerk of the City of ———, Texas, do hereby certify that the location herein given as the place of business is in a "wet area" and that the sale of alcoholic beverages for which license or permit is

sought is not prohibited by the Charter, Ordinances, or any amendments thereto at said location and that no provision of the City Charter or any Ordinances or amendments thereto place any limitations upon the sale of alcoholic beverages at said location, except as follows:

Given under my hand and seal of office this the _____ day of _____, A.D. 19—.

---

City Secretary/Clerk

The City Secretary refused to take any action to execute the certificate. Instead, a meeting of the Board of Aldermen was called by Mayor Wayne Phillips for the night of January 24, 1972. Present at the meeting were the Mayor and Aldermen Paul Phillips, Joe Nathan Harmon, Wilbert Davis, and Thurman Harmon. The minutes of that meeting reflect that the "[f]irst item of business was the discussion of giveing [sic] Isaac Davis a permit to operate a liquor store in the City." The Board voted unanimously to deny plaintiff the requested permit, on the ground that he had not resided in Coffee City for one year prior to making the application. Neither plaintiff nor his attorney were personally notified of the meeting, although a notice was posted by the City Secretary on the door of the City Hall.

Plaintiff now seeks, *inter alia*, a mandatory injunction to require the City Secretary to issue the necessary certificate, and additionally alleges that he is entitled to damages and attorney's fees against the city and the individually named city officials. Plaintiff bases his claim on both federal and state grounds. His federal claim is brought under 42 U.S.C., § 1983, on the ground that the city ordinance draws an unreasonable and arbitrary distinction between residents and non-residents of Coffee City. A violation of the Equal Protection Clause is thus alleged, and plaintiff brings himself within the literal wording of § 1983. Plaintiff alleges, alternatively, that the ordinance, in addition to violating the federal constitution, is invalid under the Texas constitution and the Texas Liquor Control Act.

 Although plaintiff is primarily urging his § 1983 claim, the court is of the opinion that, under the doctrine of pendent jurisdiction, the validity of the ordinance should be decided upon state law grounds rather than upon federal constitutional grounds. The exercise of pendent jurisdiction is proper when the federal and state claims both "derive from a common nucleus of operative fact" and are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Plaintiff's federal and state claims obviously meet both the criteria of *Gibbs*. Furthermore, the court is persuaded that the law of Texas is reasonably clear, obviating the necessity of considering difficult constitutional questions.

The manufacture, distribution, and sale of alcoholic beverages in Texas is comprehensively regulated by the Texas Liquor Control Act, Art. 666–1 (1952) et seq., Vernon's Ann.P.C., dealing in Part I with intoxicating liquors and in Part II with beer. Although the primary responsibility for implementing and enforcing the Act is vested in the Texas Alcoholic Beverage Commission, the Act does specifically delegate to the municipalities power to promulgate and to enforce certain limited types of regulations concerning alcoholic beverages. (1) Article 666–15a1 permits cities, under certain circumstances, to levy fees on alcoholic beverage licenses. (2) Article 666–24 provides that in any city where, by city charter, liquor is prohibited from being sold in a residential section, the charter provision shall remain in effect after the passage of the Texas Liquor Control Act. The courts of Texas have subsequently interpreted this article to mean that a city, by charter, can prohibit sale of liquor in a residential section in the first instance even after

the passage of the Texas Liquor Control Act. (3) Article 666–25a provides that cities may prohibit the sale of alcoholic beverages within 300 feet of any church, public school, or public hospital. (4) Article 667–10½ provides that cities may prohibit the sale of beer in residential areas and may, within the limits set by the Act, prescribe opening and closing hours.

■■ The court is of the opinion that the comprehensive nature of the Texas Liquor Control Act, as construed by the Texas courts, indicates that cities may pass and enforce only the four types of regulations mentioned above. Part II of the Act, regulating beer, states explicitly in article 667–2 that "[u]nless otherwise . . . specifically provided by the terms of this Act, the . . . sale . . . of beer . . . shall be governed exclusively by the provisions of this Article." If beer were the only beverage involved in the dispute here, the plain wording of article 667–2 would, without question, foreclose the defendants. Part II of the Act plainly does not give cities the power to regulate beer by the giving and withholding of building permits conditioned on length of residence. *See* Munoz v. City of San Antonio, 318 S.W.2d 741, 743 (Tex.Civ.App. —San Antonio 1958, writ dism'd w. o. j.). However, no provision similar to article 667–2 appears in Part I of the Act, governing intoxicating liquors. By this omission, the legislature could have intended by implication to grant municipalities the broad and general power to regulate the sale of intoxicating liquors, thus giving them more regulatory power over intoxicating liquors than over beer. It would appear, however, that if such were the intent of the legislature, it would hardly have been necessary to include within the statute the specific authority given by articles 666–15a1, 666–24, and 666–25a, for these specific powers would have necessarily been encompassed within the broad powers implicitly granted by the legislature's silence.

■ Secondly, the Act specifically sets out certain residency requirements for obtaining alcoholic beverage permits. Article 666–11, in Part I, provides that an applicant for a retail beer dealer license must have been a citizen of Texas for three years prior to application. The court is of the opinion that the legislature did not intend to permit local municipalities to promulgate residency requirements which in particular cases might be more restrictive than those imposed in the first instance by the statute itself. *See* Le Gois v. State, 80 Tex. Cr.R. 356, 190 S.W. 724 (1916).

■■ Thirdly, Coffee City is a municipality organized under the general laws of Texas. Cities so organized, in contrast to home rule cities, may exercise only those powers specifically or by necessary implication granted to them by the legislature. *E. g.*, Pitre v. Baker, 111 S.W. 2d 359, 361 (Tex.Civ.App.—Beaumont 1937, no writ). The Texas Liquor Control Act unquestionably does not contain any specific authorization allowing a municipality such as Coffee City to impose, under the guise of regulating the issuance of building permits, a residency requirement supplemental to the residency requirement included in the statute. Nor is any such power to be inferred by implication. The court has examined article 1133 et seq., Vernon's Ann.Civ.St. (1963), governing incorporation of cities of the size of Coffee City, and can find no provisions that either specifically or by implication give the city the power to pass and to enforce the ordinance here in question. Accordingly, the prayer for injunctive relief will be granted.

■ Turning now to the claim for damages, the court is of the opinion that the claim is precluded by Texas law. It has been held that a city's action in denying a building permit, although wrongful, is the exercise of a governmental function and therefore not compensable unless the denial results in actual taking of or in damage to the claimant's property. Kirschke v. City of Houston, 330 S.W.2d 629, 634 (Tex.Civ. App.—Houston 1960, writ ref'd n. r. e.), appeal dismissed, 364 U.S. 474, 81 S.Ct.

242, 5 L.Ed.2d 221 (1960); cf. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). In regard to plaintiff's claims against the Aldermen and City Secretary individually, the law requires plaintiff, as prerequisite for recovery, to show that the Aldermen and City Secretary acted in bad faith with knowledge that the ordinance was invalid. Nelson v. Knox, 265 F.2d 312, 315 (6th Cir. 1958); W. Prosser, Torts 1014 (3rd ed. 1964). Plaintiff has not carried his burden in this respect. The evidence shows that the ordinance was passed after consultation with the City Attorney. Without a showing of something more, the court must presume that, acting upon the advice of its attorney, the Board considered the promulgation and enforcement of the ordinance to be legal.

The evidence concerning the residency of plaintiff, of course, could be interpreted to disclose bad faith on the part of the Board of Aldermen, but the court does not so interpret it. It is true that the Board complied only with minimum notice requirements in regard to the January 24 meeting and that plaintiff was never given a personal hearing by the Board as to his actual place of residence. But it is also true that evidence was adduced at the meeting of January 24 which indicated that plaintiff had moved to Tyler within a year prior to application. After having heard evidence on the residency of plaintiff at trial, the court is of the opinion that the Board was not unjustified in determining that plaintiff had actually moved. In any case, the matter is not so clear that the court would be justified in ascribing bad motives to the city officials in this respect. Accordingly, the prayer for damages will be denied.

 In regard to the prayer for attorney's fees, the court is of the opinion that it should likewise be denied. In the first place, the decision of the court does not rest on federal law. Whatever authority a federal equity court might exercise under § 1983 to award attorney's fees does not automatically carry over to decisions resting purely on construction of a state statutory scheme. Secondly, the rationale for awarding attorney's fees in civil rights cases is to insure that impecunious and deserving litigants will be able to obtain lawyers to assist in prosecuting causes which not only attempt to vindicate private civil rights claims, but also tangentially attempt to vindicate at the same time the civil rights of classes of the general population as well. Here the award of an attorney's fee will not forward this policy, since plaintiff's lawyer admitted in open court that he will be paid by one Brooks Atwood, in any event. Furthermore, stripped of its § 1983 sugar coating, this suit appears to have been brought to vindicate essentially private economic interests rather than to protect plaintiff's civil rights, as that term is usually understood.

 Finally, the court deems it appropriate to state succinctly its reasons for not invoking the doctrine of abstention under Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Briefly, *Pullman* abstention is appropriate when the court is presented with a federal constitutional attack upon a state statute or ordinance and there are questions of state law that may be dispositive of the case, obviating the necessity of reaching the constitutional question. Under *Pullman* type abstention, the federal court ordinarily stays its hand but retains jurisdiction until the parties have had an opportunity to obtain a definitive state court decision of the issues. C. Wright, Federal Courts 197 (2d ed. 1970). However, where the relevant state law is settled or clear, as the court believes the law in the instant case to be, *Pullman* type abstention is inappropriate. Although the court cannot point to any Texas decisions narrowly dispositive of the issue here, a reading of the applicable Texas statutes and cases leads the court inescapably to the conclusion that the ordinance in question is invalid under Texas law. Hence, abstention is not justified. Accordingly, it is

Ordered that a writ of mandatory injunction issue ordering and compelling defendant, Coffee City, Texas, and defendant, Mary Phillips, as City Secretary, to cause the execution of the City Secretary's Certificate on each of plaintiff's applications for permits under the Texas Liquor Control Act and ordering and compelling the defendants to issue a building permit which will permit plaintiff to construct such buildings on his premises on Coffee Landing Road as may be required to operate and conduct a package store, beer, wine, or liquor store establishment; and that plaintiff be additionally granted an injunction restraining defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participation with them from interfering in any manner with the construction of a package store building or buildings on plaintiff's premises on Coffee Landing Road, and the commencement and operation by plaintiff of a package store or other wine and/or beer establishment for which plaintiff may subsequently be granted a license by the State of Texas. It is further

Ordered that plaintiff's demands for damages and attorney's fees be, and they are hereby, denied.