**Raffaelina SALVATI, Individually & t/d/b/a Garden of Eve**

v.

**George DALE et al.**

**Raffaelina SALVATI, Individually & t/d/b/a Garden of Eve, et al.**

v.

**Jack NORRIS, Zoning Officer of the Borough of Monroeville, et al.**

**Civ. A. Nos. 73-461, 73-572.**

United States District Court,
W. D. Pennsylvania.
Oct. 5, 1973.

692

Allen N. Brunwasser, Pittsburgh, Pa., for plaintiffs.

Richard L. Rosenzweig, Pittsburgh, Pa., for defendants.

## OPINION

SNYDER, District Judge.

The above causes of action arise from a common factual situation and are for convenience here treated together. The plaintiffs are owners and employees of an establishment known as the Garden of Eve. The Garden is located in a multi-occupancy building in the Borough of Monroeville, Allegheny County, Pennsylvania. The Borough filed a Complaint in Equity in the Common Pleas Court of Allegheny County at No. 2028 July Term, 1973, seeking an injunction to close the Garden alleging a failure by the plaintiffs to comply with various Ordinances of the Borough and with the Pennsylvania Municipalities Planning Code.[1]

1. The pertinent allegations of the Borough's Complaint in the Common Pleas action are:

4. Defendants did unlawfully open the business establishment designated Garden of Eve on or about May 16, 1973.

5. The defendants caused the aforementioned establishment to open in violation of the Monroeville Zoning Ordinance, without benefit of an occupancy permit, with insufficient parking area, and in violation of Ordinance No. 730 as amended by Ordinance No. 836 defining disorderly houses, and in violation of the Pennsylvania Statutes requiring registration of fictitious names.

6. The Borough's Zoning Code and Ordinance, particularly Sections 1702 and 1703 require a building permit and/or a certificate of occupancy to be issued before a building can be used for a commercial establishment and open for business.

7. That the defendants were advised by the borough that an application for a building permit and a certificate of occupancy must be filed before a business can be conducted on the premises.

8. That the defendants are operating a massage parlor and promoting and engaging in activities which are contrary to the permitted uses applicable to a C–2 classification in the borough and which are detrimental to the health, safety and welfare of the residents of the borough.

9. That, in addition, the defendants' operation is in violation of the borough's zoning code and ordinances and in further violation of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10617, 1968, July 31, P.L. 805, No. 247, Article VI, Section 617.

10. That the defendants have consistently ignored and refused to comply with the borough's zoning code and ordinances and have continued to operate the business at the above referred to address in an illegal manner and in violation of the Pennsylvania Municipalities Planning Code as aforesaid.

11. That immediate and irreparable damage will result if defendants are permitted to continue to operate in violation of the borough's zoning laws and ordinances and in violation of the appropriate provisions of the

On June 1, 1973, Judge Hester of that Court issued a preliminary injunction; preliminary objections were filed June 4, 1973. On June 6, 1973, counsel for the Garden petitioned the Commonwealth Court for an Order of Supersedeas; this was denied June 19, 1973. On June 25, 1973, Judge Hester issued an Order making the preliminary injunction permanent.[2]

Four separate actions have been filed by plaintiffs (defendants in the court proceedings in Allegheny County Court) in federal court. Only two, as captioned above, concern us at this time.[3] In Civil Action No. 73–461, plaintiffs seek to set aside Borough of Monroeville Ordinance No. 836 which defines massage parlors as disorderly houses, and also seek damages, asking that there be:

"B. Declaratory and injunctive relief striking down the above-described ordinances and ordering defendants to

terminate the illegal course of action described above;

"C. That the matter be sent to a jury for assessment of damages under the Civil Rights Act and other laws providing for damages;

"D. Any other relief deemed necessary and proper by this Honorable Court."

The defendants in that action are George Dale, Tom Sherger, Miles Span, Warner Baum, Ron Drouski, Bill Bradley, Lavern Gardner, individually and as Councilmen of the Borough of Monroeville, John Duncan, individually and as Mayor of the Borough of Monroeville, and George Gregowich, individually and as Chief of Police of Monroeville Borough.

On July 5, 1973, the defendants filed an Answer alleging, inter alia, failure to state a cause of action and setting up immunity from suit. The defendants

---

Pennsylvania Municipalities Planning Code, all of which will adversely affect the health, welfare, safety and morals of the residents of the borough.

12. Defendants through their representatives stated publicly to the newspaper that the establishment would dispense nudity, sexual conduct, and sexual excitement as reported in the Times-Express of May 9, 1973, a copy of which article is attached hereto as Exhibit "A". Ordinance Nos. 730 and 836 are attached hereto as Exhibits "B" and "C".

13. Plaintiff believes and therefore avers that the ownership of this establishment has ties with criminal elements, and that at least one of the principals has a record of several criminal convictions.

13. (Sic) Plaintiff has no adequate remedy at law to protect the health, safety, and general welfare of the community from the intrustion of such a business enterprise and seeks a preliminary injunction after final hearing.

2. The Order of Court of June 25, 1973 entered by Judge Hester states as follows:

"AND NOW, this 25th day of June, 1973, after presentation of the case of the Borough of Monroeville, and after opportunity was given to the defendants to put in a defense at the continued hearing of June 25, 1973 at which time the defendants and their attorney did not appear, it is hereby ordered, adjudged and decreed that the prelim-

inary injunction entered herein on June 1, 1973 enjoining the defendants from operating or conducting a business at 3775 William Penn Highway in the Borough of Monroeville, Allegheny County, Pennsylvania known as the Garden of Eve Massage Parlor without an occupancy permit and in violation of the ordinances of the Borough of Monroeville is hereby made permanent.

In further consideration of the petition for Writ of assistance filed in this Court on June 5, 1973 and testimony presented by the plaintiff that the order of June 1, 1973 of this Court was disregarded, the Court further orders and directs the Sheriff of Allegheny County to enforce this order by whatever means are necessary including padlocking the premises."

3. Civil Action No. 73–524 sought to remove the action at No. 2028 July Term, 1973, from the Common Pleas Court to the United States District Court for the Western District of Pennsylvania. By Order of this Court of July 11, 1973, the Petition for Removal was denied because of the failure of the plaintiffs to file the proper bond; the Motion by the Borough of Monroeville for Remand was granted; Motion for Reconsideration was denied on July 19, 1973. Civil Action No. 73–528 sought the impanelling of a Three Judge Court; this was denied on July 11, 1973. No appeals were filed in these actions.

counterclaimed under 42 U.S.C. Section 1985 for damages and injunctive relief to prevent further threats or intimidation of Borough Officers. On July 16, 1973, the plaintiffs moved to dismiss the counterclaim to which defendants filed an answer.

On August 1, 1973, plaintiffs filed a Motion to Amend Civil Action alleging that on July 27, 1973 the defendants padlocked the premises of the plaintiff, purportedly under the authority of Ordinance No. 730 allowing the Mayor to padlock a "disorderly house". In addition, the amendment sought to add Anthony Williams as a plaintiff asserting an illegal arrest when Williams, after the premises was padlocked, was arrested for burglary as he attempted to enter the premises (having been sent there by the plaintiffs to take off the padlock). On August 2, 1973, the defendants filed a Motion to Strike the Amended Complaint or In The Alternative to Dismiss with the original Complaint, setting forth that the padlocking was done pursuant to the Order of Judge Hester and not pursuant to the Ordinance. The caption of the Amended Complaint charged as defendants the same parties as were charged in Civil Action No. 73–572.

In Civil Act No. 73–572, the plaintiffs brought action against Jack Norris, Zoning Officer of the Borough of Monroeville, Eugene Coon, Sheriff of Allegheny County, Pennsylvania, John P. Hester, a Judge of the Court of Common Pleas of Allegheny County, Pennsylvania, George Gregowich, Chief of Police of Monroeville Borough, John Michaels, Sergeant of Police of Monroeville Borough and Marshall W. Bond, Acting Manager of the Borough of Monroeville. To attempt to provide some coherence and consistency to these pleadings, we will assume this Amended Complaint should have been filed at Civil Action No. 73–572 by the plaintiffs.

In Civil Action No. 73–572, the plaintiffs alleged primarily that Judge John P. Hester improvidently issued a preliminary injunction and improperly extended the injunction, and they sought:

"B. A temporary and permanent injunction directing that all conduct complained about in this Complaint cease;

"C. An Order revoking the Orders of the state court entered on June 1, 1973 and June 25, 1973;

"D. An Order that all improper publication of information in any news media, especially if it is intended to influence the state court, cease forthwith;

"E. A declaratory Order that the conduct discussed in the within Complaint is illegal and contrary to Federal law, the Federal Constitution and Pennsylvania law and the Pennsylvania Constitution;

"F. An Order that defendant's process the request of plaintiff, Garden of Eve, for an occupancy permit and issue same;

"G. An Order that all special legislation discussed above be rendered null and void under the Declaratory Judgment Act and that an injunction issue directing that no conduct allegedly in violation of said Ordinance be prosecuted;

"H. Any other equitable and just relief deemed necessary by this Honorable Court."

On July 20, 1973, the defendants filed a Motion to Dismiss setting forth:

(1) the pendency of the action at No. 73–461 containing the same allegations;

(2) the res adjudicata effect of the Orders of this Court at Nos. 73–524 and 73–528;

(3) failure to state a cause of action on which relief can be granted.

For the reasons hereinafter set forth defendants' Motion to Dismiss will be granted and the defendants' Counterclaim will be dismissed.

## GENERAL DISCUSSION

These lawsuits arise from the attempts by the plaintiffs to open a massage parlor in the Borough of Monroeville, and the Borough's opposition to the opening of such an establishment. The plaintiff, Raffaelina Salvati, applied for an occupancy permit on behalf of the Garden of Eve on May 1, 1973. This application was given a number and a date of issuance, but the portion on the reverse side of the application which provides for the approval of the Zoning Officer was never executed nor was the paper ever delivered to the plaintiffs. The Borough contends, and we find, that the Borough's Zoning Officer originally acted on the proposition that the proposed use would be for a health spa which would include body massage, and that such use would fall within the permitted uses of a C–2 Zoning District (the location of the plaintiffs' business was in a C–2 area). Shortly thereafter, the Zoning Officer received information that the proposed use of the premises was for complete body rubs to be administered by topless female attendants. The local newspaper in the Monroeville area ran an article concerning the application for an occupancy permit made by Raffaelina Salvati and included in the article certain statements made by the acting manager of the parlor, identified only as "Tina", about the services to be supplied by the Garden of Eve to its patrons.[4] This article resulted in numerous phone calls from borough residents and the Zoning Officer rejected the occupancy permit application and notified the Garden of Eve that no permit would be forthcoming. The plaintiffs opened for business without the required occupancy permit.

Then an ordinance was passed at a special meeting of the Borough Council held May 12, 1973 which redefined a disorderly house to include a massage parlor[5] of a type identical to that which

---

4. The article stated in part:

"'The Borough says everything is alright as long as we keep this operation straight,' Tina said, adding she worked with a 'straight operation' in downtown Pittsburgh before coming to the Monroeville parlor.

When asked about the reputation massage parlors had acquired during the City of Pittsburgh's attempt earlier this year to close down such operations. Tina replied, 'They were trying to close all massage parlors down on grounds that it was against the law for women to massage men. But they'll have to take the fight all the way to the Supreme Court before they ever get that settled, its a violation of rights to say women can't massage men'.

If a customer would act toward the female attendants as if the parlor was not 'straight', Tina said, 'the girls will just tell him to cut it out. If he doesn't listen to the girls, we have a male manager who's six feet, six inches tall and I think guys will listen to him.'"

5. The law enacted at the Special Borough Meeting is set forth below:

ORDINANCE NO. 836—AN ORDINANCE OF THE BOROUGH OF MONROEVILLE DEFINING DISORDERLY HOUSES OR PLACES IN THE BOROUGH OF MONROEVILLE, AND PROVIDING PENALTIES FOR PARTIES KEEPING, MAINTAINING AND VISITING THE SAME.

BE IT ORDAINED AND ENACTED by the Borough of Monroeville, in Council assembled, as follows:

*Section 1.* Section 2 of Ordinance No. 730 is amended by the addition of the following:

In addition, a disorderly house shall include any establishment open to the public which shall engage in providing massages, body rubs, or other bodily stimulations by any means, if such massages, body rubs, or other bodily stimulations, whether by direct contact or by the performance of any act, includes nudity, sexual conduct, or sexual excitement by any party. As used in this section, the following definitions shall apply:

"Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering, or the showing of covered genitals in a discernibly turgid state.

the plaintiffs had opened without the required occupancy permit. The Borough then sought injunctive relief in the Court of Common Pleas of Allegheny County, and the defendants in that action, through their attorney, have filed the subject complaints in this Court.

## I. CAUSE OF ACTION AGAINST JUDGE HESTER

In Civil Action No. 73–572, one of the defendants is the Honorable John P. Hester, a Common Pleas Court Judge, who was assigned the action in which the plaintiffs here are party defendants in the state court. The charges of plaintiffs concerning Judge Hester relate to his issuance of the preliminary injunction and its continuance.[6]

The law is well settled that judicial officers are immune from suit under the Civil Rights Act for acts undertaken in the performance of their duties. Pierson v. Ray, 386 U.S. 547, 87 S.Ct.

"Sexual conduct" means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast.

"Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

*Section 2.* Section 3 of Ordinance No. 730 is amended by the addition of the following: The penalty shall be increased as follows: "a fine not exceeding Five Hundred ($500.00) Dollars" and the additional sentence: "The Mayor is authorized to direct the padlocking of any premises which constitute a disorderly house".

ORDAINED AND ENACTED this 12th day of May, 1973.
ATTEST: s/ Marshall W. Bond
Acting Secretary

BOROUGH OF MONROEVILLE
By s/ George C. Dale
President of Council

EXAMINED AND APPROVED this 12th day of May, 1973.
s/ John J. Duncan
Mayor

Entered in Legal Book May 15, 1973

---

6. The charges relative to Judge Hester include:

"4. John P. Hester is a duly elected and distinguished member of the Judiciary of the Court of Common Pleas of Allegheny County, Pennsylvania. * * *

"8. At all times here relevant, defendants were operating under color of office and/or in excess of powers of their office. * * *

"16. On June 1, 1973, Judge John P. Hester issued an injunction closing down the Garden of Eve without permitting full cross examination of the only witness, Jack Norris, and without having a complete evidentiary hearing, all in violation of the settled law of the Commonwealth of Pennsylvania, Pubusky v. D. M. F., Inc., 1968, 428 Pa. 461, 239 A.2d 335, and also did not limit the injunction to five days as required by the settled law of the Commonwealth of Pennsylvania, Com. ex. rel Costa v. Boley, 1971, 441 Pa. 495, 272 A.2d 905; Apple Storage Co., Inc. v. Consumers Education and Protective Assn., et. al, 1971, 441 Pa. 309, 272 A.2d 476 [496]. * * *

"20. The Monroeville officials are improperly and in bad faith using the Courts of the Commonwealth of Pennsylvania to violate the State and Federal Constitutions as above and below set forth and also requesting the state court to grant Orders which they know or should know are improper and unconstitutional and, by this technique, are depriving the Garden of Eve and persons associated with them of property without due process of law.

"21. That the said temporary injunction directed against plaintiffs was entered without proper service of the Complaint or notice of the hearing so that the state court never obtained jurisdiction of plaintiffs, but, nevertheless, proceeded as though it had. The Affidavit of Service filed in Civil Action No. 73–524 was examined on July 2, 1973 by United States District Judge Daniel J. Snyder, Jr., and declared insufficient to invoke the jurisdiction of the state court and in violation of the Pennsyl-Rules of Civil Procedure. A photograph of the Affidavit of Service is marked Exhibit 'E'.

"22. That an appeal from the temporary injunction issued by Judge Hester was im-

mediately taken to the Commonwealth Court of Pennsylvania and docketed at No. 755 C. D. 1973, together with a Motion for Supersedeas, which was denied on June 19, 1973. A copy of this Order of denial is marked Exhibit 'F'.

"23. On June 7, 1973, Judge Hester took further testimony on the part of the Borough of Monroeville. At the said continued hearing, it was disclosed:

A. That Michael Lackovic, a member of the Allegheny County Police Force, visited the Garden of Eve on May 27, 1973, and although he requested if oral or regular sex would be available, he was met not only with denial but also with a statement that any employee who even suggested this or engaged in it would be immediately discharged.

B. Sandy McCracken, who accompanied him, also made the identical inquiry and received the same answer; * * *

"25. That at the June 7, 1973 hearing, arrangements were made for John F. Pilgrim, representing the Garden of Eve, to appear at the office of Jack Norris for the purpose of processing an application for an occupancy permit. This appointment, set for June 8, 1973, at 11:30 a. m., was arranged between Judge Hester, Jack Norris and Marshall W. Bond. However, when Pilgrim arrived at the Borough Building, Bond was not available and inquiry as to when he would be resulted in what could be called the well known 'run around'. * * *

"27. That because of the failure of Jack Norris to keep the appointment and because of the failure of the Borough to process the Notice of Appeal served upon its authorized officer on June 5, 1973, and because of the testimony of Jack Norris given June 1, 1973, before Judge Hester, plaintiffs believe and thus aver that they never will be able to obtain any occupancy permit unless this Honorable Court intervenes on their behalf. The Notice of Appeal is marked Exhibit 'G'.

"28. In order to terminate the jurisdiction of Judge Hester, protect the civil rights and other federal and state rights of plaintiffs, to prevent the issue of a writ of assistance and an Order of civil contempt and to prevent adjudication on a Motion for criminal contempt, conviction of which is a misdemeanor, plaintiffs filed a removal action in this Honorable Court at Civil Action No. 73–524 on June 25, 1973.

A true and correct copy of the pleading was served upon counsel for the Borough of Monroeville and Judge Hester. A true and correct copy of said pleading was also docketed in the Prothonotary of the state court at approximately 1 p. m. on that day, together with notices that the docketing and service terminated the authority of the state Judge.

"29. That Judge Hester and counsel for the Borough of Monroeville then jointly investigated the entire situation. An Order was then entered ex parte granting a permanent injunction. A copy of this Order is marked Exhibit 'H'. On its face, it indicates that no additional testimony was taken.

"30. That plaintiffs believe and thus respectfully suggest to the Court that the state court should have gone no further because

A. The case was removed and jurisdiction terminated;

B. The Court and opposing counsel must have known that counsel for plaintiffs, herein, had assumed that the state court would obey the Federal law and would not continue on with the case and therefore did not appear to defend;

C. An appeal having been docketed in the Commonwealth Court, the state court had no jurisdiction to continue on with the hearing in any event.

"31. That on June 4, 1973, plaintiffs filed preliminary objections, a copy of which is marked Exhibit 'I'.

"32. That the ordinary procedure is to have these preliminary objections placed on the argument list for disposition by a court en banc before the one-Judge Court goes any further.

The permanent injunction is an adjudication and final decree because it grants complete relief to the Borough of Monroeville. Plaintiffs believe and thus aver that the procedure violates Pa.R.C.P. 1516 and 1517, [12 P.S.Pa. Appendix]. * * *

"34. Plaintiffs respectfully invoke the doctrine and reasoning of Gibson v̇. Berryhill, 1973, [411 U.S. 564,] 93 S.Ct. 1689, [36 L. Ed.2d 488,] and respectfully suggest that the Zoning Officer of the Borough of Monroeville is biased and has predetermined the issues so that there is no adequate administrative remedy, especially since an appeal would then be required to the Board of Zoning Appeals which has ignored the previous appeal marked Exhibit 'G' and since an adjudication from this adverse decision would be taken to the Court of Common Pleas of Allegheny County, Pennsylvania, all of which would entail long delay and result in loss of employment and the eventual forfeit of the $30,000 investment already made.

A. Plaintiffs intend to file Exceptions to the June 25, 1973 Order of Judge Hester, a copy of which is marked Exhibit 'J'. In the regular course of things, this matter will not be considered until the October, 1973 argument list subsequent to which time will pass until a decision is made. The hearing judge usually makes the decision and, if Judge Hester remains, as he apparently indicates he will, of the same opinion, an appeal will be required to be filed to the Commonwealth Court of Pennsylvania which will probably

1213, 18 L.Ed.2d 288 (1967); Robinson v. McCorkle, 462 F.2d 111 (3d Cir. 1972); Gaito v. Ellenbogen, 425 F.2d 845 (3d Cir. 1970); Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966) and cases cited therein; Burak v. Sprague, 335 F. Supp. 347 (E.D.Pa.1971); Burton v. Peartree, 326 F.Supp. 755 (E.D.Pa. 1971). From the allegations presented against Judge Hester at Civil Action No. 73–572, we can only conclude that plaintiffs' action against the judge is based on the adverse rulings by the Court of Common Pleas of Allegheny County against the plaintiffs here (defendants in the state court action).

In Pierson v. Ray, *supra*, (386 U.S. p. 553, 87 S.Ct. p. 1217), the Supreme Court held:

"We find no difficulty in agreeing with the Court of Appeals that Judge Spencer is immune from liability for damages for his role in these convictions. The record is barren of any proof or specific allegation that Judge Spencer played any role in these arrests and convictions other than to adjudge petitioners guilty when their cases came before his court. Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in Bradley v. Fisher, 13 Wall. 335, [80 U.S. 335,] 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and cor-

ruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (Scott v. Stansfield, LR 3 Ex 220, 223 (1868), quoted in Bradley v. Fisher, *supra*, (80 U.S.) 349; note, at 350, 20 L.Ed. at 650.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

We do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have

not hear the case until April, 1974, subsequent to which an adjudication will be made at some time in the future, all of which will deprive plaintiffs of any adequate remedy at law unless this Court acts. * * *

"43. On July 9, 1973, counsel for defendants and the Borough of Monroeville had delivered to Judge John P. Hester a copy of an editorial appearing in the Times Express, which editorial it is believed and thus averred defendants were instrumental in having published.

"44. It is respectfully believed and thus averred that this article was published in the

Times Express and delivered to Judge Hester for the express purpose of intimidating this member of the Judiciary and in order to influence him to take action against plaintiffs which action he would not take. Whether this will be successful remains to be seen.

"45. That it is respectfully believed and this averred that the action of counsel for defendants and the Borough of Monroeville in delivering the said letter, Exhibit 'L', to Judge Hester was a direct and flagrant violation of 17 P.S. § 2045 for which plaintiffs request damages and invoke the doctrine of pendant jurisdiction discussed above." (Sic, errors appeared in original document)

specifically so provided had it wished to abolish the doctrine." (Emphasis added.)

■ The actions and rulings of Judge Hester were part of his official duties of office, and he is, therefore, immune from any action brought under the Civil Rights Act. For this reason, the cause of action against the Honorable John P. Hester, Judge of the Common Pleas Court must be dismissed.

## II. CAUSE OF ACTION AGAINST EUGENE COON, SHERIFF OF ALLEGHENY COUNTY

In Civil Action No. 73–572, one of the defendants is Eugene Coon, Sheriff of Allegheny County, Pennsylvania. The charges of the plaintiffs against Sheriff Coon consist of the following:

7. The allegations of the amended complaint consist of the following:

"Raffaelina Salvati, individually & t/d/b/a Garden of Eve, Anthony Deramo and David Grahm appear and aver as follows:

1. That Raffaelina Salvati has filed an action at the above number and term.

2. That at all times here relevant, defendants were operating, through authorized servants and agents, upon their exclusive business and subject to their complete direction and control.

3. That on July 27, 1973, defendants, acting aforesaid, padlocked premises of plaintiff.

4. That the . said padlocking was done without authority of law, without any previous hearing or notice and under alleged authority of Ordinance No. 730 passed May 12, 1973 which declares "the Mayor is authorized to direct the padlocking of any premises which constitute a disorderly house.

4. That not only is this padlocking a violation of due process of law because it does not provide for a previous or subsequent hearing as required by the 5th and 14th Amendments to the Constitution of the United States and Article 1, Sections 1 and 25 of the Pennsylvania Constitution, P.S. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, [25 L.Ed.2d 287,] but it also deprives plaintiff of the right to a jury trial, Commonwealth v. Miller, 305 at [A.]2d 346, Pa. S.Ct., decision entered May 23, 1973.

5. That defendants, acting as aforesaid, have also threatened to post the involved premises with a no trespassing sign, without authority of law, so that anyone entering the premises can be arrested on view.

"3. Eugene Coon is the duly elected Sheriff of Allegheny County, Pennsylvania. * * *

"8. At all times here relevant, defendants were operating under color of office and/or in excess of the powers of their office."

■ There are no allegations here which state a cause of action under the Civil Rights Act, and the cause of action in the original complaint against Sheriff Coon must be dismissed.

In the Motion to Amend Civil Action and Add Additional Plaintiff, the allegations deal with the padlocking of the premises of the plaintiff on July 27, 1973, and the arrest of one Anthony Williams who attempted to enter the premises on July 27, 1973.[7]

6. That defendants have threatened, acting as aforesaid to arrest any person including plaintiff who arrives on the premises even though the Order of Judge John P. Hester only covers the operation of a massage parlor and not general egress and ingress.

7. That defendants, acting as aforesaid, have made continuous unauthorized entry into the involved premises without permission, thus violating the privacy of plaintiff.

8. That on July 27, 1973, on view and without any process of law, defendants, acting as aforesaid, summarily arrested Anthony Williams on charges of obstructing justice, burglary and possessing burglary tools when he attempted to enter the involved premises. The arrest was made by three police officers with drawn revolvers, two of whom were Willis Greenaway and William Kominski, duly appointed police officers of the Borough of Monroeville acting on instructions from defendants.

9. That Anthony Williams attempted to enter the premises by authority of plaintiff and for no illegal purpose and through the rear door which was not locked. After the arrest, he was searched, molested, taken to a magistrate in Penn Hills which magistrate refused to take any criminal charges against him because they were unauthorized at law.

10. But nevertheless, defendants acting as aforesaid, have threatened to reinstate the charges before Magistrate John P. Salton of Monroeville, Pennsylvania, which magistrate has taken approximately twenty multiple prosecutions against various parties including plaintiff.

11. On July 30, 1973 defendants, acting as aforesaid and through their counsel who

Plaintiffs contend that the actions by the above named defendants, including Sheriff Coon, in the padlocking of the premises and the arrest of Anthony Williams, were done pursuant to Ordinance No. 730 which was passed by the Borough of Monroeville on May 12, 1973 (See Footnote 4). The pleadings of both parties contain a copy of the Order of Judge Hester entered June 25, 1973 (See Footnote 2). Since there is only one allegation (which will be discussed in detail) which alleges that the Sheriff was acting beyond the scope of his authority, and since all of the incidents alleged in the amended complaint occurred after June 25, 1973, we can only conclude that Sheriff Coon and his deputies were acting pursuant to the Order of Judge Hester and were not acting pursuant to the Borough Ordinance.

■ The law is well settled that a sheriff is immune from suit alleging violation of plaintiff's civil rights by the actions of the sheriff while he is acting as the arm of the county court in carrying out judicial functions of the court in his capacity as sheriff. Steinpreis v. Shook, 377 F.2d 282 (4th Cir. 1967), cert. denied, 389 U.S. 1057, 88 S.Ct. 811, 19 L.Ed.2d 858; Godwin v. Williams, 293 F.Supp. 770 (D.C.Texas 1968); Link v. Greyhound Corp., 288 F.Supp. 898 (D.C.Mich.1968); Haigh v. Snidow, 231 F.Supp. 324 (D.C.Cal.1964); Rhodes v. Houston, 202 F.Supp. 624 (D.Neb.), affirmed, 309 F.2d 959 (8th Cir.), cert. denied 383 U.S. 971, 86 S.Ct. 1282, 16 L.Ed.2d 311.

It is alleged in the Amended Complaint by plaintiff, Anthony Williams, in Allegation No. 9, that:

"After the arrest, he was searched molested, taken to a magistrate in Penn Hills which magistrate refused to take any criminal charges against him because they were unauthorized at law."

■ In an action for damages under the Civil Rights Act, the plaintiff must allege specific facts. A complaint alleging deprivation of constitutional rights by mere conclusory allegations unsupported by facts is fatally defective. Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), affirmed, 345 F.2d 797 (3 Cir.), and cases cited therein. Plaintiff Williams' allegations does not state such specific facts but mere conclusory statements and, therefore, the complaint will be dismissed as to Sheriff Eugene Coon.

III. CAUSE OF ACTION AGAINST GEORGE GREGOWICH, CHIEF OF POLICE and JOHN MICHAELS, SERGEANT OF POLICE, MONROEVILLE BOROUGH

George Gregowich is named as a defendant in both Civil Action No. 73–461 and Civil Action No. 73–572. John Michaels is a named defendant only in Civil Action No. 73–572.

The allegations against Gregowich and Michaels consist of the following:

"5. George Gregowich is the duly appointed Chief of· Police of the Borough of Monroeville.

---

personally appeared on the premises have been harrassing plaintiff and her friends. At that time the place was really being cleaned up and rubbish removed.

12. That friends of plaintiff were threatened with arrest under Section 3503 of the Criminal Code of the Commonwealth of Pennsylvania which crime, defined as defiant trespass, which has nothing to do with any factual situation in the possession of defendants.

13. That friends of plaintiff were advised that they would be arrested and taken to the police station if they appeared on the premises again.

14. That no order of any court or any reason at law prohibits people from going in and out of the premises.

15. That plaintiff and your petitioner, Anthony Williams, respectfully believe and aver that it is the intention of defendants, acting through authorized servants and agents and police officers of the Borough of Monroeville all upon their exclusive business and subject to their exclusive direction and control intend to set up a policy of continuous harrassment and arrest without any justification at law unless stopped by this Honorable Court." (Sic, all errors appeared in original document)

"6. John Michaels is the Sargeant of said Police Force. * * *

"8. At all times here relevant, defendants were operating under color of office and/or in excess of the powers of their office. * * *

"23. On June 7, 1973, Judge Hester took further testimony on the part of the Borough of Monroeville. At the said continued hearing, it was disclosed:

A. That Michael Lackovic, a member of the Allegheny County Police Force, visited the Garden of Eve on May 27, 1973, and although he requested if oral or regular sex would be available, he was met not only with denial but also with a statement that any employee who even suggested this or engaged in it would be immediately discharged.

B. Sandy McCracken, who accompanied him, also made the identical inquiry and received the same answer;

C. John Michaels, a Sargeant of the Police Force of the Borough of Monroeville, was directed by Chief of Police George Gregowich to visit the Garden of Eve on June 5, 1973 and June 6, 1973, during which visit he expended $70 in tax funds only to discover that no sodomy, oral sex or intercourse was available on the premises. * * *

The Sargeant also testified that under Ordinance No. 836, each particular act of impropriety constituted a separate offense, for which a fine of $500 could be levied against each person involved."

(Sic, all errors in original document.)

In Pierson v. Ray, *supra,* the Supreme Court held:

"The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid. Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. *Restatement, Second, Torts* § 121 (1965); 1 Harper & James, *The Law of Torts* § 3.18 at 277–278 (1956); State of Missouri v. Fidelity & Deposit Co. of Maryland, 179 F.2d 327 (CA 8th Cir 1950). A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied.

"We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983."
(Emphasis added)

■ Since plaintiffs do not allege that these defendants were acting in bad faith in their enforcement of the local ordinance, and since defendants in their Answers to the plaintiffs' Complaints contend that all defendants were acting in good faith, we can conclude that such is true of the above named defendants. Applying the principles of the Pierson case and the line of cases following those principles, we can only conclude that the actions against defendants

George Gregowich, Chief of Police, and John Michaels, Sergeant of Police, Borough of Monroeville, must be dismissed. If these defendants were acting pursuant to the Order of Court of Judge Hester, then the principles of immunity which have been set forth in regard to Sheriff Coon would apply equally to these defendants. In either event, the cause of actions against George Gregowich and John Michaels will be dismissed.

IV.  CAUSE OF ACTION AGAINST JACK NORRIS, ZONING OFFICER OF BOROUGH OF MONROEVILLE, MARSHALL BOND, ACTING MANAGER OF THE BOROUGH OF MONROEVILLE, GEORGE DALE, TOM SHERGER, MILES SPAN, WARNER BAUM, RON DROUSKI, BILL BRADLEY, LAVERN GARDNER, INDIVIDUALLY AND AS COUNCILMEN OF THE BOROUGH OF MONROEVILLE, AND JOHN DUNCAN, INDIVIDUALLY AND AS MAYOR OF THE BOROUGH OF MONROEVILLE.

The facts surrounding the allegations against the above named defendants, simply stated, are that plaintiffs sought a permit to open their massage parlor from the Borough of Monroeville. Evidently, they received some assurances from the Borough's Zoning Officer that the occupancy permit would issue in the near future. There was some coverage in the local newspaper regarding the intended use, and the Borough then decided to deny the plaintiffs' application. Plaintiffs then went ahead and opened without the required permit. Thereafter, the Borough held a meeting at which the Council passed an ordinance making the activities which the plaintiffs intended to have performed illegal. The plaintiffs continued to operate in the face of the ordinance, and the Borough then proceeded with an action in the state court and obtained a permanent injunction against the plaintiffs when, at the injunction hearing, no one appeared on behalf of the Garden of Eve.

The crucial questions raised by the various complaints made by the plaintiffs are:

1. Do the representations made by the defendant, Norris, amount to issuance of the requisite permit?

2. Can a borough pass an ordinance making certain activities illegal and then refuse a previously filed application for an occupancy permit?

3. Can the borough after passing such an ordinance then restrain these activities through the use of the state courts?

To answer the above questions, as set forth by the parties, the interpretation and constitutionality of the aforementioned ordinances and procedures are in question. We have carefully reviewed the pleadings and briefs filed by counsel and we conclude that the defendants' Motions to Dismiss must be granted, and it is not necessary for us to reach the questions above.

In Elmwood Properties, Inc. v. Conzelman, 418 F.2d 1025 (7th Cir. 1969), cert. denied, 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684, which also concerned a civil rights action filed by plaintiff because of the denial of a permit by the city counsel, the Court held:

"Even if the denial of the permit were to be deemed inappropriate, the plaintiffs complain here while the avenue of administrative appeal remains open to them. There is a suit pending in the circuit court of Lake County (City of Waukegan v. Elmwood Properties, Inc., 68 ED 4756 (1968)). An ordinance of the city of Waukegan sets forth the procedure when review is desired. Section 127.51 of the city ordinances provides as follows:

'Report—The board of survey shall determine its findings, and submit, a report in writing affirming or modifying the order of the building official in whole or in part and recommending the remedial steps to be tak-

en to render the building or structure safe.'

The court in Basista v. Weir, 225 F.Supp. 619, 625 (W.D.Pa.1964), in an action under § 1983, stated:

'The Civil Rights Act was never intended to displace state remedies. It was created as a guarantee that a remedy whould be provided where the State for ulterior or no reasons would not or could not provide one. Basista had been provided with state remedies but he chose not to avail them. He showed no reasons for refusing them. While it is true that a party is not required to exhaust his state remedies before resorting to federal rights action or even using them concurrently (Screws v. United States, *supra*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495); Monroe v. Pape (1961), 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, the reason for failure to take advantage of state remedies may as here provide the shading or coloration required to distinguish in the remedy pursued between redress of a violation of civil rights and retaliation for an affront to personal pride.'

It appears that the due process violations which the plaintiffs allege would be sufficiently overcome by a utilization of the available state remedies. Under Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), an exhaustion of state remedies is not required; nevertheless, when, as here, an exhaustion of remedies will eliminate any possible constitutional problems, then that route should be followed." (Emphasis added) (p. 1027)

Our situation is quite similar since plaintiffs admit in the pleadings that an appeal from the ruling of the Zoning Officer was taken to the Zoning Board. Plaintiffs allege that this administrative appeal would be fruitless since the Zoning Board, which is a creation of the Borough Council, would be apt to follow the Zoning Officer's ruling. Even if such were the case, plaintiffs still retain the right to appeal such an adverse ruling to the state courts of Pennsylvania. The allegations of the plaintiffs do not charge that said courts are so prejudicial that they would not grant the relief sought. Plaintiffs rely on Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 498 (1973); Houghton v. Shafer, 392 U.S. 639, 88 S. Ct. 2119, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), for the proposition that in an action under the Civil Rights Act, 42 U. S.C. 1983, an exhaustion of state administrative remedies is not required. With this principle we wholeheartedly agree, but we think it is inapplicable in this particular fact situation. The facts in *Gibson, supra,* are as follows:

"Appellees, licensed optometrists employed by Lee Optical Co., who were not [licensed] members of the Alabama Optometric Association (Association), were charged by the Association with unprofessional conduct within the meaning of the state optometry statute because of their employment with the company. The complaint was filed with the Alabama Board of Optometry (Board), all members of which were Association members. The Board deferred proceedings while a suit it had brought against optometrists and their employer, Lee Optical, to enjoin the company from practicing óptometry was litigated in the state trial court. The charges against the individual defendants were dismissed but the court enjoined Lee Optical from engaging in the practice of optometry. The company appealed. When the Board revived the Associations's charges against appellees, they sought an injunction in the Federal District Court under the Civil Rights Act claiming that the Board was biased. The court concluded that it was not barred from acting by the federal anti-injunction

statute since only administrative proceedings were involved and that exhaustion of administrative remedies was not mandated where the administrative process was biased in that the Board by its litigation in the state courts had prejudged the case against appellees and the Board members had an indirect pecuniary interest in the outcome. The District Court enjoined the Board proceedings but thereafter and before this appeal was taken, the State's highest court reversed the judgment against Lee Optical and held that the optometry law did not prohibit a licensed optometrist from working for a corporation."

After a very detailed analysis of the procedural occurrences and a lengthy statement of the facts, the Supreme Court held:

"We agree with the District Court that neither statute nor case law precluded it from adjudicating the issues before it and from issuing the injunction if its decision on the merits was correct.

28 U.S.C. § 2283, the anti-injunction statute prohibits federal courts from enjoining state court proceedings, but the statute excepts from its prohibition injunctions which are 'expressly authorized' by another Act of Congress. Last Term, after the District Court's decision here, this Court determined that actions brought under the Civil Rights Act, 42 U.S.C. § 1983, were within the 'expressly authorized' exception to the ban on federal injunctions. Mitchum v. Foster, 407 U.S. 225 [, 92 S.Ct. 2151, 32 L.Ed.2d 705] (1972).

Our decision in *Mitchum*, however, held only that a district court was not absolutely barred by statute from enjoining a state court proceeding when called upon to do so in a § 1983 suit. As we expressly stated in *Mitchum*, nothing in that decision purported to call into question the established principles of equity, comity and federalism which must, under appropriate circumstances, restrain a federal court

from issuing such injunctions. Id., at 243 [, 92 S.Ct. 2151]. These principles have been emphasized by this Court many times in the past, albeit under a variety of different rubrics. First of all, there is the doctrine, usually applicable when an injunction is sought, that a party must exhaust his available administrative remedies before invoking the equitable jurisdiction of a court. See, e. g., Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908); Illinois Commerce Comm'n v. Thomson, 318 U.S. 675, 63 S.Ct. 834, 87 L.Ed. 1075 (1943). Secondly, there is the basic principle of federalism, restated as recently as 1971 in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971), that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harrassment or irreparable injury that is both serious and immediate. And finally, there is the doctrine, developed in our cases at least since Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), that when confronted with issues of constitutional dimension which implicate or depend upon unsettled questions of state law, a federal court ought to abstain and stay its proceedings until those state law questions are definitively resolved.

In the instant case the matter of exhaustion of administrative remedies need not detain us long. Normally when a State has instituted administrative proceedings against an individual who then seeks an injunction in federal court, the exhaustion doctrine would require the court to delay action until the administrative phase of the state proceedings is terminated, at least where coverage or liability is contested and administrative expertise, discretion or factfinding is involved. But this Court has expressly held in recent years that state administrative remedies need not be exhausted where the federal court plain-

tiff states an otherwise good cause of action under 42 U.S.C. § 1983. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). Whether this is invariably the case even where, as here, a license revocation proceeding has been brought by the State and is pending before one of its own agencies and where the individual charged is to be deprived of nothing until the completion of that proceeding, is a question we need not now decide; for the clear purport of appellees' complaint was that the State Board of Optometry was unconstitutionally constituted and so did not provide them with an adequate administrative remedy requiring exhaustion. Thus, the question of the adequacy of the administrative remedy, an issue which under federal law the District Court was required to decide, was for all practical purposes identical with the merits of appellees' law suit."

The final statement in the above holding clearly shows the factual situation here inapposite with that in *Gibson, supra*. In this case, the plaintiff has a full and adequate remedy in the Courts of the Commonwealth of Pennsylvania by appealing the decision of the Zoning Board to the State Court. If, as the plaintiff alleges, no decision would be forthcoming and delay would result, plaintiff would have the remedy available to him of seeking injunctive relief in the state courts which courts would then determine the peculiarly unique questions of state zoning laws and municipal ordinances involved in this situation.

In regard to bypassing administrative remedies in a civil rights action, Judge Friendly in Eisen v. Eastman, 421 F.2d 560 (2nd Cir. 1969), made the following analysis:

"Until quite recently the accepted learning had been that a plaintiff complaining to a federal court of the violation of a constitutionally protected right by a state officer must exhaust state administrative remedies although not judicial ones. Contrast Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), with Bacon v. Rutland R. R., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914), both written by Mr. Justice Holmes, and see Wright, Federal Courts § 49. The considerations supporting the requirement for exhaustion of state administrative remedies have been well summarized in a recent law review not which we set forth in the margin. However, four recent decisions of the Supreme Court have been thought to cast serious doubt on the applicability of this important principle in cases brought under the Civil Rights Act. Although we have held above that Eisen cannot predicate jurisdiction upon that Act, thereby precluding reliance upon 42 U.S.C. § 1983 even though the requirements of 28 U.S.C. § 1331 have been met, we entertain sufficient doubt on that score that we think it necessary to assay those decisions. With the breadth the Civil Rights Act has even under Mr. Justice Stone's formulation, let alone what it would have under the broader construction that may well be adopted, the consequences of compelling federal courts to pass upon all complaints of unconstitutional acts by state and local officials at the lowest level, without any requirement of appeal to higher ones, would be so destructive of proper concepts of federalism and so needlessly burdensome to the federal courts that it is appropriate to examine whether the decisions have not been given a greater sweep than the Court intended.

The first of the four, McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), was a desegregation case. The Illinois administrative remedy to which the Court first turned its attention was this: Fifty residents of a school district or 10% whichever was less, could file a complaint with the Superintendent of Public Institutions alleg-

ing racial segregation. He would then put this down for hearing. If he decided that the allegations were 'substantially correct', he would then *request* the Illinois Attorney General to bring suit. The bulk of the opinion was devoted to demonstrating that this did not qualify as an effective administrative remedy. Apart from the plaintiff's problem of getting other signers, the Superintendent himself could give no relief; the most he could do was seek action from the Attorney General. Even if the Attorney General heeded the request, the true remedy would be not administrative but judicial and, as indicated above, the Court had long held that the mere availability of a state judicial remedy did not bar resort to the federal courts, whether under the Civil Rights Act or otherwise. In a concluding paragraph the Court took note of another alleged state remedy: a school district might not file a claim for state aid unless it had previously filed with the Superintendent a statement of compliance with constitutional and statutory provisions outlawing segregation. Defendants contended that the Superintendent would not certify a district for state aid if he found the statement false. The Court answered that no Illinois case had ever held this, and that 'In any event, the withholding of state aid is at best only an indirect sanction of Fourteenth Amendment rights. When federal rights are subject to such tenuous protection prior resort to a state proceeding is not necessary,' 373 U.S. at 676, 83 S.Ct. at 1438. We find little basis in this for the view, taken by many courts and commentators, see Note, Exhaustion of State Remedies under the Civil Rights Act, *supra,* 68 Colum.L.Rev. at 1203 & n. 15, that *McNeese* abolished the requirement of exhaustion of adequate state administrative remedies in all cases brought under the successor to § 1 of the Civil Rights Act of 1871. The Court held only that there was no administrative

remedy by which plaintiffs could have any assurance of getting the relief they wanted—an end to segregation —even if they were clearly entitled to it.

The three other cases are Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, *supra,* 392 U.S. at 312, n. 4, 88 S.Ct. 2128; and Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed. 2d 1319 (1968). *Damico* was a per curiam opinion rendered on a jurisdictional statement and a motion to dismiss. The Court quoted *McNeese* as holding, 373 U.S. at 671, 83 S.Ct. at 1435, that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided (an administrative) remedy' (brackets in original), and then cited Monroe v. Pape, 365 U.S. 167, 180–183, 81 S.Ct. 473, 5 L.Ed.2d 492. But the portion of the McNeese opinion that was quoted dealt with a state judicial not administrative remedy, as Monroe v. Pape also had done. The answer, we think, can be found in the later statement in King v. Smith, citing *Damico,* that a plaintiff in an action under the Civil Rights Act 'is not required to exhaust administrative remedies, where the constitutional challenge is sufficiently substantial, as here, to require the convening of a three-judge court.' 392 U.S. at 312 n. 4, 88 S.Ct. at 2131. Insofar as *Damico's* complaint attacked the *constitutionality* of the California law postponing AFDC aid for three months after desertion by or separation from the father unless a suit for divorce had been filed, it is hard to see what an administrative hearing could have accomplished; the California relief agency could not declare the state statute unconstitutional. While King v. Smith involved a state regulation rather than a statute, it was also exceedingly unlikely that an administrative hearing would produce a change. Finally in Houghton v. Shafer, 392 U.S. 639, 88 S.Ct.

2119, 20 L.Ed.2d 1319 (1968), the complaint concerned prison rules that the attorney general of the state submitted had been 'validly and correctly applied to petitioner.' Under such circumstances to compel resort to an administrative remedy culminating in an appeal to that very officer 'would be to demand a futile act.' 392 U.S. at 640, 88 S.Ct. at 2120.

"Despite the breadth of some of the language, particularly in the *Damico* per curiam, we thus read these decisions as simply condemning a wooden application of the exhaustion doctrine in cases under the Civil Rights Act. Exhaustion of state administrative remedies is not required where the administrative remedy is inadequate, as in *McNeese,* or where it is certainly or probably futile, as in *Damico, Smith* and *Houghton.* A quite different situation would be presented, for example, when a complaint alleged that a subordinate state officer had violated the plaintiff's constitutional rights by acting because of bias or other inadmissible reasons, by distorting or ignoring the facts, or by failing to apply a constitutional state standard, and the state has provided for a speedy appeal to a higher administrative officer, as New York City has done here. We shall need much clearer directions than the Court has yet given or, we believe, will give, before we hold that plaintiffs in such cases may turn their backs on state administrative remedies and rush into a federal forum. whether their actions fall under the Civil Rights Act or come under general federal question jurisdiction." (Emphasis added)

Discussing the question of bias, the Supreme Court in *Gibson, supra,* stated:

"It is appropriate, therefore, that we consider the District Court's conclusions that the State Board of Optometry was so biased by prejudgment and pecuniary interest that it could not constitutionally conduct hearings looking toward the revocation of appellees' licenses to practice optometry. We affirm the District Court in this respect.

The District Court thought the Board to be impermissibly biased for two reasons. First, the Board had filed a complaint in state court alleging that appellees had aided and abetted Lee Optical Company in the unlawful practice of optometry and also that they had engaged in other forms of 'unprofessional conduct' which, if proved, would justify revocation of their licenses. These charges were substantially similar to those pending against appellees before the Board and concerning which the Board had noticed hearings following its successful prosecution of Lee Optical in the state trial court.

Secondly, the District Court determined that the aim of the Board was to revoke the licenses of all optometrists in the State who were employed by business corporations such as Lee, and that these optometrists accounted for nearly half of all the optometrists practicing in Alabama. Because the Board of Optometry was composed solely of optometrists in private practice for their own account, the District Court concluded that success in the Board's efforts would possibly redound to the personal benefit of members of the Board, sufficiently so that in the opinion of the District Court the Board was constitutionally disqualified from hearing the charges filed against the appellees.

The District Court apparently considered either source of possible bias ——prejudgment of the facts or personal interest—sufficient to disqualify the members of the Board. Arguably, the District Court was right on both scores, but we need reach, and we affirm, only on the latter ground of possible personal interest.

It is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes.

Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). And Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), indicates that the financial stake need not be as direct or positive as it appeared to be in *Tumey.* It has also come to be the prevailing view that 'most of the law concerning disqualification because of interest applies with equal force to . . . administrative adjudicators.' Davis, Administrative Law Text, § 12.04, p. 250 (1972), and cases cited. The District Court proceeded on this basis and, applying the standards taken from our cases, concluded that the pecuniary interest of the members of the Board of Optometry had sufficient substance to disqualify them, given the context in which this case arose. As remote as we are from the local realities underlying this case and it being very likely that the District Court has a firmer grasp of the facts and of their significance to the issues presented, we have no good reason on this record to overturn its conclusion and we affirm it.' "

Our situation differs from that in the Gibson case since none of the aforementioned defendants have any substantial pecuniary interests in the adjudication of plaintiffs' disagreement with the Zoning Officer that would disqualify them from adjudicating this case.

We do not, nor could we, reach the factual issue of whether or not the Board is so biased as to allow plaintiffs to enter the federal courts through the use of the Civil Rights Act and his allegations that the administrative remedies available are inadequate.

We do believe that because of principles of equity, comity, and federalism, this Court is precluded from acting. As the Supreme Court stated in *Gibson, supra:*

"This brings us to the question of whether Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), or the principles of equity, comity and federalism for which those cases stand, precluded the District Court from acting in view of the fact that proceedings against appellees were pending before the Alabama Board of Optometry. Those cases and principles would, under ordinary circumstances, forbid either a declaratory judgment or injunction with respect to the validity or enforcement of a state statute when a criminal proceeding under the statute has been commenced. Whether a like rule obtains where state civil proceedings are pending was left open in *Younger* and its companion cases.

Appellants now insist, not only that the issue is posed here by the pendency of proceedings before the state board, but also that the issue was actually decided following *Younger* by our summary affirmance in the case of Geiger v. Jenkins, 401 U.S. 985, 91 S.Ct. 88, 30 L.Ed.2d 90 (1971). In that case the State Medical Board of Georgia noticed hearings on charges filed against a medical practitioner who immediately brought suit in federal court under § 1983 seeking an injunction on the ground that the underlying statute the Medical Board sought to enforce was unconstitutional. The District Court dismissed the action without reaching the merits, holding that the state proceedings were 'in the nature of criminal proceedings,' sufficiently so in any event to trigger the 28 U.S.C. § 2283 bar to federal intervention. 316 F.Supp. 370 (N.D.Ga.1970). The decision was appealed to this Court and summarily affirmed without opinion but with citation to *Younger* and *Mackell.*

As frequently occurs in the case of summary affirmance, the decision in *Geiger* is somewhat opaque. We doubt, however, that it is controlling here. First of all, it appears from the jurisdictional statement and motion to affirm in *Geiger* that state criminal proceedings were pending at the time of the challenged dismissal of the fed-

eral case. Moreover, it also appears that subsequent to that dismissal the State Medical Board completed its proceedings and revoked Geiger's license, and that judicial proceedings to review that order were already under way in the state courts. Secondly, there is no judicial finding here as there was in *Geiger* that under applicable state law license revocation proceedings are quasi-criminal in nature; nor is the Alabama case law now cited for this proposition persuasive. See State v. Keel, 33 Ala.App. 609, 35 So. 2d 625 (1948). Finally, although it is apparent from *Geiger* that administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings, there remains the claim here, not present in *Geiger*, that the administrative body itself was unconstitutionally constituted, and so not entitled to hear the charges filed against the appellees.

Unlike those situations where a federal court merely abstains from decision on federal questions until the resolution of underlying or related state law issues—a subject we shall consider shortly in the context of the present case—Younger v. Harris, contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts. Such a course naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved. Here the predicate for a Younger v. Harris dismissal was lacking for the appellees alleged, and the District Court concluded, that the State Board of Optometry was incom-

petent by reason of bias to adjudicate the issues pending before it. If the District Court's conclusion was correct in this regard, it was also correct that it need not defer to the Board. Nor, in these circumstances, would a different result be required simply because judicial review, *de novo* or otherwise, would be forthcoming at the conclusion of the administrative proceedings."

The particular problems of state law and local ordinance concern whether or not the defendants can refuse to give the plaintiffs their permit by declaring the proposed use of the premises illegal, after application proceedings have commenced. Is such action within the police powers of the Borough?[8]

In Hill v. City of El Paso, Texas, 437 F.2d 352 (5th Cir. 1971), the plaintiff brought a civil rights action seeking an injunction against further prosecution of state suits, both civil and criminal, against him for violation of a municipal ordinance. The allegations of the plaintiff consisted of the following:

"The complaint alleged the following facts. The City through officials of its zoning department, the Judge in his judicial capacity, and Davis as a complaining witness, were conspiring to violate Hill's civil rights by instituting a civil action for a prohibitory injunction and numerous municipal court criminal proceedings to curtail or proscribe his commercial operations. For a number of years the City of El Paso had objected to his use of certain leased premises in the city for a business which he described as a public automobile garage claiming it was in violation of the zoning ordinances of the city. The present zoning classification, C–3, which ap-

8. Several cases in other jurisdictions have determined that the local authorities have the general right to regulate the occupation of massagists and the business of massage salons and similar establishments in the interest of public health, safety or morals. Kisley v. City of Falls Church, 212 Va. 693, 187 S.E.2d 168, 170, dismissed for want of substantial federal question, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169; Cheek v. City of Charlotte, 273 N.C. 293, 297, 160 S.E.2d 18, 22 (1968); Patterson v. City of Dallas, 355 S.W.2d 838 (Tex.Civ.App.1962); Ex parte Maki, 56 Cal.App.2d 635, 133 P.2d 64 (1943). See also 17 A.L.R.2d 1183–1190. Cf. Davis v. Coffee City, Texas, 356 F.Supp. 550 (E.D.Tex.1972).

plied to his property, expressly allowed the use and maintenance of the business he was conducting. The named defendants had subjected Hill to continual harassment and prosecution by falsely claiming the business he was conducting on his leasehold premises was not a public garage, but rather was a junk yard, a use not permitted in a C–3 zone. The city ordinance which defined 'junk' was indefinite, ambiguous, standardless and unconstitutional. In the alternative it was alleged that plaintiff did not sell or maintain any junk, as defined in the city ordinance, in the operation of his business on the subject premises. In addition to seeking an injunction against the pending State court litigation, the complaint sought a declaration of invalidity of the ordinance defining junk, and actual and punitive damages. In capsule, the substance of Hill's complaint is twofold: (1) the business that he is operating on the subject premises is a public garage within the meaning of the city's zoning requirements and is not a junk yard; and (2) the El Paso ordinance defining 'junk' is unconstitutionally vague.

No answer was filed in the court below nor was any evidence taken. However, the record contains a transcribed colloquy between the court and counsel for Hill, in which it was asserted that Hill's business operations, at least in part, involved the presence of used automobiles and parts connected to such automobiles on the premises. It appears that Hill sells parts he takes from these old automobiles for further service as used parts. He does not sell these items as scrap or for any use other than that for which the part was originally intended.

The district court dismissed Hill's complaint without prejudice on the ground that he failed to exhaust his State remedies. Although we do not agree with the reason assigned for the district court's action, we affirm."

In holding that the doctrine of abstention was applicable in that particular situation, the Fifth Circuit held:

"There is an equally substantial reason why the action of the lower court should be affirmed *in toto*. The complaint presented an appropriate, indeed a compelling, cause for the application of the doctrine of abstention. We are presented with the classic action where a federal forum can and should avoid the decision of a constitutional issue which may and probably will disappear when the appropriate State forum decides a simple but unsettled question of State law.

"A brief review of abstention decisions almost always begins with Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which stands for the proposition that if a local ordinance is unclear on its face but a State court decision can remove any ambiguity and possibly avoid the need for a decision of a constitutional question, a federal court ought to exercise its discretion to abstain. See generally C. Wright, Law of Federal Courts 196 et seq. (2d ed. 1970).

Hill argues that a definition of junk more definite than that used in the El Paso ordinance, has been held invalid by the Texas courts in Ex parte Scott, 130 Tex.Cr.R. 29, 91 S.W.2d 748 (1936), on the grounds that the definition went beyond the permissible bounds of the State police power. El Paso argues that its ordinance was drafted with express knowledge of the *Scott* decision and that its ordinance is consistent with the principles laid down in *Scott*. Such arguments are plainly fundamental matters of State law, most appropriate for State court determination. It is unseemly for court systems of concurrent jurisdiction to engage in a tug of war over the same case. Since our system of federalism contemplates that State courts are fully as competent to adjudicate federal questions and to protect

federal rights as are federal courts, the latter should be slow to intervene where State court proceedings are so clearly the more appropriate. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). In City of Meridian v. Southern Bell Telephone Company, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959), the Supreme Court in discussing this delicately balanced area of the law stated:

> Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions * * * This is especially desirable where the questions of state law are enmeshed with the federal questions. * * * Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty— certainly for a federal court * * * In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. (Citations omitted 358 U.S. at 640, 79 S.Ct. at 456.) The principle retains its full vitality today. Reetz v. Bozanich, et al., 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed. 2d 68 (1970). It precisely befits the case at bar since we do not deal (a) with issues intimately entwined with the commerce clause, see e. g., Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964) and Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed. 174 (1970); nor (b) with repressions of First Amendment rights, see e. g. Dombrowski v. Pfister [, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22] and Zwickler v. Koota, supra, [389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444,] nor (c) with other issues having national, as opposed to intrastate significance.

The question of when the doctrine of abstention ought to be invoked is a matter that involves the exercise of discretion, Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), and must be approached on a case by case rather than any general principle basis, Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The fact setting in the case at bar involves the routine application of zoning regulations. This is distinctly a feature of local government. We have recognized that these grass roots procedures are outside the general supervisory power of federal courts. Zayre of Georgia, Inc. v. City of Marietta, 416 F.2d 251 (5th Cir. 1969). Just as is true in cases where the bar of Section 2283 has received its most relaxed application, some significant abridgement or chilling of First Amendment rights has been intimately entwined in prior decisions of this Circuit holding abstention discretion was abused. See e. g., Davis v. Francois, 395 F.2d 730 (5th Cir. 1968); Hunter v. Allen, 422 F.2d 1158 (5th Cir. 1970) and Moreno v. Henckle, 431 F.2d 1299 (5th Cir. 1970).

While the better practice in cases where the doctrine of abstention is to be applied is for the federal forum to retain jurisdiction rather than dismissing the action without prejudice, Zwickler v. Koota, supra, this Circuit has affirmed such dismissals in abstention situations. Blume v. City of Deland, 358 F.2d 698 (5th Cir. 1966), Brown v. Pearl River Valley Water Supply District, 292 F.2d 395 (5th Cir. 1961).

A dismissal without prejudice because abstention is to be applied does not require Hill to litigate his federal claims in the pending State court proceedings. He clearly has the right to inform the State courts of what federal claims, if any, he intends to litigate there and to reserve any remaining federal rights for future litigation in

the federal court, in the event such litigation becomes necessary. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Abstention does not involve an abdication of federal jurisdiction, only the postponement of its exercise.

Although it ought to be so obvious as to be redundant it appears apt to express that every asserted legal wrong neither needs nor finds a federal remedy. We hold that the court below committed no error in remitting Hill to the courts of the State of Texas for a resolution of the issue of the validity of El Paso's ordinance defining junk in the pending State court proceedings." (Emphasis added)

Plaintiffs state in their Memorandum:

"If the Court will do plaintiff the kindness of reading the various authorities cited in the pleadings, it is apparent that state law is clear and that the various appeal courts have decided exactly what it is. Therefore, there would be no reason to send the matter back for interpretation. It is respectfully suggested that on the basis of state law, Judge Hester should not have entered his Order and that, in all probability, the state courts of appeal would probably reverse. However, by the time this occurred, such a substantial period of time would pass that the final victory would be an empty one indeed.

It is respectfully suggested that the United States Court should not abstain but should set a hearing for a determination on the merits."

We wish to point out to counsel for the plaintiffs that we have carefully read and analyzed the authorities which he has presented, but we find that the crucial question presented to us is the interpretation of the Borough Ordinance and the interpretation of Section 901.7, i.e., what constitutes "Baths (Turkish and the like)." If the plaintiffs' activities fall within this section, they well might deserve their permit. Since the

interpretation of this statute is peculiarly a question of state law, i.e., determining whether or not plaintiffs' activities fall within those prescribed for a C–2 Zone occupant, this federal court should abstain from this case.

This Court is well aware of the rule in Holt v. Brown, 336 F.Supp. 2 (W.D. Ky.1971) that:

"The power of a federal court to refrain from deciding an action brought under the Civil Rights Act is a closely restricted one; in fact, it is widely recognized that cases involving questions of civil rights are the least likely candidates for abstention. See Wright v. McMann, 2nd Cir., 387 F.2d 519 (1967)." (Emphasis added) Jones v. Wittenberg, 323 F.Supp. 93 (D.C.Ohio 1971); opinion supplemented 330 F.Supp. 707 (D.C.), affirmed 456 F.2d 854 (6 Cir.).

We believe, however, that the holding of the Third Circuit in University Day Care Ctr. v. Temple U.—Com. of Higher Ed., 442 F.2d 1116 (3d Cir. 1971) is applicable to our present situation. In that case, after stating the questions presented, the Court held:

"Several of these questions, if answered in the negative, would avoid the need for considering the Fourteenth Amendment issues asserted by the plaintiffs. If they are all answered in the affirmative there is no reason to suppose that the Court of Common Pleas will be insensitive to any federal constitutional issues remaining after the state law issues have been resolved. This, then, is a classic case for federal deference to a state forum. See Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Of particular relevance is the recent decision of the Supreme Court in Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), which reaffirmed the appropriateness of abstention in a case brought under 42 U.S.C. § 1983 where 'state

law claims * * * if sustained * * * will obviate the necessity of determining the Fourteenth Amendment question.' At 478, 91 S.Ct. at 858. There is, moreover, the salutary policy that '(i)n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.' Smith v. McIver, 22 U.S. 532, 535, 6 L.Ed. 152 (1824). There is no need for the federal court to retain jurisdiction, since it is not alleged that complete relief will be unavailable in the Court of Common Pleas. The order of the district court dismissing the complaint will be affirmed." (Emphasis added)

See also Bower v. Coder, 345 F.Supp. 78 (M.D.Pa.1972).

The Supreme Court in its most recent analysis of the abstention doctrine in *Gibson, supra,* held:

"Finally, we do not think that the doctrine of abstention, as developed in our cases from Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) to Lake Carriers' Assn. v MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), required the District Court to stay its proceedings until the appellees had presented unsettled questions of state law to the state courts. Those questions went to the reach and effect of the state optometry law and concerned the merits of the charges pending against the appellees, at the heart of which was the issue of whether Alabama law permitted licensed optometrists to be employed by business corporations and others. That central question was pending in the Alabama Supreme Court in the Lee Optical Company [Lee Optical Co. of Alabama v. Board of Optometry, 288 Ala. 338, 261 So.2d 17] case at the time the District Court entered its order. As was noted earlier, however, appellees here had been dismissed from that case by the state trial court, and it was only after this dismissal, and after the Board had reactivated its charges against them, that appellees sought relief in federal court.

Arguably, the District Court should have awaited the outcome of the *Lee Optical* appeal, a decision which might have obviated the need for an injunction in this case. But the Board was pressing its charges against appellees without awaiting that outcome and, in any event, it appears that at least some of the charges pending against appellees might have survived a reversal of the state trial court's judgment by the Alabama Supreme Court. Under these circumstances, it was not an abuse of discretion for the District Court to proceed as it did.

Nevertheless, the Alabama Supreme Court has since rendered its decision not only in the *Lee Optical* case, but also in a companion case, House of \$8.50 Eyeglasses v. State Board of Optometry, 288 Ala. 349, 261 So.2d 27 (1972). See n. 10 *supra.* Individual optometrists were parties to that latter case, and the Alabama Supreme Court entered judgment in their behalf, holding that nothing in the State's optometry law prohibited a licensed optometrist from accepting employment from a business corporation. Whether this judgment substantially devitalizes the position of the Board with respect to the appellees here, or in any way makes unnecessary or removes the 'equity' from the injunction entered by the District Court, we are unable to determine. But we do think that considerations of equity, comity, and federalism warrant vacating the judgment of the District Court and remanding the case to that court for reconsideration in light of the Alabama Supreme Court's judgments in the *Lee Optical* and *House of \$8.50 Eyeglasses* cases. We in no way intimate whether or not the injunction should be reinstated by the District Court."

We have come to the conclusion that the issues involved in our aforementioned cases lend themselves to application of the Abstention Doctrine by this

Federal Court.[9] We sympathize with plaintiffs in their position, but such position is partially of their own making. The plaintiffs through their attorney point out that going through the administrative processes would be futile since their application to the Zoning Board would be turned down to comply with the wishes of the Borough's Zoning Officer. Nowhere, however, do plaintiffs allege that the state courts would be so prejudicial or that review by such courts would be fruitless.

Confusion centers on the action presently before Judge Hester. That action seeks to compel plaintiffs to abide by the enacted Ordinance of the Borough of Monroeville. Judge Hester in his ruling simply ordered the plaintiffs here to abide by the Borough's Ordinance. Counsel for the plaintiffs admits in his Brief that he has numerous alternatives in the state courts, i.e., mandamus, review of the ruling of the Zoning Board, etc. When the action by the Borough was scheduled for a hearing he, however, countered by filing an action in federal court.

We believe that solution of this particular situation depends initially on interpretation of the Zoning Ordinance. It also involves the procedural methods used by the Borough of Monroeville which entail uniquely local questions and matters properly to be decided by the state court. Plaintiffs here can receive an interpretation of the local ordinance and its constitutionality, and well may bypass any federal questions that they might have. With such in mind, the plaintiffs' causes of action at Civil Nos. 73–461 and 73–572 are dismissed.

An appropriate order will be entered which, in summary, will dismiss the causes of action against Judge John P. Hester, Eugene Coon, George Gregowich and John Michaels with prejudice for the reasons stated in this opinion. The causes of action against the remaining defendants will also be dismissed without prejudice for the aforementioned reasons. Defendants' counterclaim will also be dismissed.

---

9. We believe our holding here is consistent with the principles set forth in Roy, et al. v. Jones et al., 484 F.2d 96 (3rd Cir. 1973).