Lewis **HOBBY** and Terry Bell, Plaintiffs,

v.

Thurl **BRADLEY** and Rosemary Richter, Defendants.

No. 74 C 2347.

United States District Court,
N. D. Illinois, E. D.

Jan. 13, 1975.

Erwin M. Pearl Asso., Ltd., Chicago, Ill., for plaintiffs.

Bernard Carey, State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, Senior District Judge.

This is a civil rights action based on conduct arising out of mistaken identity. The defendants have moved to dismiss the amended complaint on the ground that it fails to state a claim upon which relief can be granted.

The amended complaint contains, among others, the following allegations:

On April 28, 1974, plaintiffs Lewis Hobby and Terry Bell were sitting in Hobby's parked automobile. As Hobby attempted to start the automobile, the defendants, "acting under color of authority as [Sheriff's] Police Officers, . . . fired at plaintiffs with pistols," doing so "without just cause or provocation" and "with the intention of seriously wounding them." "[I]n an effort to avoid being wounded," plaintiffs abandoned the automobile and fled to a nearby Chicago police station. When the defendants arrived at the station they explained "that they had mistaken [plaintiffs] for other persons who [were] earlier [involved in] committing a crime and had been in error in firing . . . at them." (Amended Complaint, pars. 4–7). The plaintiffs claim that such conduct by officers acting un-der color of state law has deprived them of rights, privileges, and immunities guaranteed each citizen by the "Fourth, Fifth, and Fourteenth" Amendments to the United States Constitution. (Amended Complaint, par. 11).

Although expressing reservations about the appropriateness of the label, modern commentators adhere to the proposition that the Federal Rules of Civil Procedure sanction "notice" pleading. *E. g.,* see Wright & Miller, Federal Practice and Procedure: Civil § 1202. The Seventh Circuit also adheres to this proposition. In the words of that Court:

"The complaint is designed to apprise the defendant of the incident out of which a cause of action arose and the general nature of the action. The relevant facts may be determined by discovery, with the pleadings being liberally construed so as to do substantial justice and facilitate a proper decision on the merits." Roberts v. Acres, 495 F.2d 57 at 58–59 (7th Cir. 1974).

The same concept carries forward into situations where a motion to dismiss is employed to attack the sufficiency of a complaint. For example, in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Justice Black wrote:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. at 102.

As for civil rights complaints specifically, the Seventh Circuit demands that they be accorded a liberal construction. Roberts v. Acres, 495 F.2d 57, citing Eaton v. Bibb, 217 F.2d 446 (7th Cir. 1955) and Birnbaum v. Trussell, 347 F.2d 86 (2nd Cir. 1965).

In *Roberts,* a civil rights action brought by an administrator for the death of his decedent who was shot, al-

legedly "without right or provocation," by a village police officer, the Seventh Circuit reversed a District Court order which had allowed defendant's motion to dismiss for failure to state a claim. Quoting from Marshall v. Sawyer, 301 F.2d 639 at 646 (9th Cir. 1962), the Seventh Circuit set down the requirements for a sufficient complaint under Section 1983:

> "The only elements which need to be present in order to establish a claim for damages under the Civil Rights Act are that the conduct complained of was engaged in under color of state law, and that such conduct subjected the plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution of the United States." 495 F.2d at 59.

■ In United States v. Classic, the Supreme Court ruled that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." 313 U.S. 299 at 325–326, 61 S.Ct. 1031 at 1043, 85 L.Ed. 1368 (1941). In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court concluded that the meaning given "under color of" law in the *Classic* case and adhered to in Screws v. United States, 325 U.S. 91 at 108–113, 65 S.Ct. 1031, 89 L.Ed. 1495 and Williams v. United States, 341 U.S. 97 at 99, 71 S.Ct. 576, 95 L.Ed. 774 was the correct one, and applied this meaning to the phrase as used in Section 1983. The Court also ruled that to be compensable under Section 1983 an act need not have been committed with "a specific intent to deprive a person of a federal right," and that as a civil remedy, Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." 365 U.S. at 187, 81 S.Ct. at 484.

In this Circuit, the sufficiency of a civil rights complaint must be examined in the light of all these principles.

■ In the complaint in question, plaintiffs have alleged that at all times pertinent, the defendants acted in their official capacities as Sheriff's Police Officers; that under color of the laws of Illinois and its municipal subdivisions, the defendants, without just cause or provocation, did fire pistols at plaintiffs. Such allegations are sufficient to establish that the defendants "acted under color of state law." Roberts v. Acres, 495 F.2d 57, 59 (7th Cir. 1974); Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492; Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495; Geach v. Moynahan, 207 F.2d 714 (7th Cir. 1953).

Plaintiffs have also alleged that defendants fired at them while they were sitting in an automobile owned by plaintiff Hobby. The defendants have not asserted that plaintiffs were in the act of committing a crime. Contrariwise, the amended complaint contains allegations that defendants "stated" they had mistaken plaintiffs for other persons who were earlier involved in committing a crime and had been in error in firing at them. The essence of these allegations is that defendants failed to take the steps necessary under the law to insure that plaintiffs were the suspects sought. The use of deadly force under such circumstances is sufficient to state a claim that plaintiffs were deprived of the right to due process guaranteed each citizen by the Fourteenth Amendment. See, *e. g.*, Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968); Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966); Hardwick v. Hurley, 289 F.2d 529 (7th Cir. 1961); Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957); Davis v. Turner, 197 F.2d 847 (5th Cir. 1952); Love v. Davis, 353 F.Supp. 587 (W.D.La.1973); *cf.* Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970).

■ Finally, as to defendants' claim that damage to plaintiff's automobile (Amended Complaint, par. 9) is not cognizable under Section 1983, it is sufficient to note that the rights protected under this statute are not limited to

what are commonly termed "personal" rights. Relief under the Civil Rights Act is limited only by the confines of the Fourteenth Amendment itself. The Supreme Court underscored this proposition in the case of Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). In *Lynch*, an action under Section 1983, the plaintiff sought declaratory and injunctive relief against Connecticut statutes which authorized summary pre-judicial garnishment of funds. A three-judge federal court dismissed the cause on the ground that it lacked jurisdiction because 28 U.S.C. § 1343, which grants federal courts jurisdiction over civil rights suits, only applies to "personal," and not "property" rights. [318 F. Supp. 1111 (D.Conn.1970)]. In rejecting this reasoning, the Supreme Court stated:

> "[T]he dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized." (citations omitted) 405 U.S. at 552, 92 S.Ct. at 1122.

Even if this is, as defendants contend, a state property claim couched in federal terms, the doctrine of pendent jurisdiction applies, for the pending federal claim has already conferred upon this Court the requisite subject matter jurisdiction. As the federal and state claims both "derive from a common nucleus of operative fact" and are such that the plaintiff "would ordinarily be expected to try them . . . in one judicial proceeding" [the test set forth in the lead case of United Mine Workers v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)], this Court, upon "considerations of judicial economy, convenience, and fairness to litigants", has discretion to hear the claim. See, *e. g.*, Davis v. Coffee City, Texas, 356 F.Supp. 550, 553 (E.D.Tex. 1972); Drennan v. City of Lake Forest, 356 F.Supp. 1277 (N.D.Ill.1972). This latter (vs. "federal claim") approach would, of course, be consistent with plaintiffs' theory that the damage allegedly done to Hobby's automobile rose out of and was one in a chain of events set in motion by the alleged case of mistaken identity.

Defendants' motion must therefore, in all respects, be denied.