Marv HIXON d/b/a Hixon Home Improve-
ment, and American States Insurance
Company, Plaintiffs-Appellants,

v.

SHERWIN–WILLIAMS COMPANY,
Defendant-Appellee.

No. 81–2312.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1982.

Decided Feb. 12, 1982.

Bruce P. Clark, Galvin & Galvin, Frank J. Galvin, Jr., Hammond, Ind., for plaintiffs-appellants.

Randall J. Nye, Beckman Kelly & Smith, Hammond, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and POSNER, Circuit Judge.

POSNER, Circuit Judge.

In this diversity case we decide a question of federal jurisdiction plus several questions under the common law of Indiana.

Mr. and Mrs. Chess, who are not parties to this litigation, sustained several hundred dollars in water damage to the kitchen floor of their home in Indiana. Their homeowner's insurer, American States Insurance Company, a nonresident corporation, hired a local contractor, Marv Hixon, to install a new linoleum floor in the kitchen. Too busy to attend to the contract himself, Hixon subcontracted the job to the Sherwin-Williams Company, another nonresident corporation. Sherwin-Williams is a manufacturer of linoleum and other products rather than a building contractor, but it undertook to install its linoleum in the Chesses' kitchen rather than just sell the linoleum to Hixon for installation. The local office of Sherwin-Williams hired Louis Benkovich to do the installation. Benkovich had been in the linoleum installation business for many years and had done previous jobs for Sherwin-Williams. His reputation was good; people said, "Louie puts in a nice floor." He had never been known to have an accident or otherwise fail to render adequate service. He was self-employed, and was retained by Sherwin-Williams as an independent contractor rather than an employee. Sherwin-Williams did not supervise his work and knew nothing about the particulars of the Chess job beyond the fact that Hixon wanted a new linoleum floor installed.

The new linoleum could not be attached directly to the cement floor beneath it because of dampness; a plywood layer was required between the cement and the linoleum. Benkovich used a glue that happened to be extremely flammable to fasten the plywood to the cement. The label on the can contained explicit and emphatic warnings concerning the flammability of the glue and the importance of good ventilation. Benkovich had never used this brand of glue before; in fact, he had never in his many years as a linoleum contractor fastened a plywood layer to a cement floor. He proceeded to ignore the warnings on the can; he may not even have read them. Instead of opening the windows and turning off the pilot light in the hot water heater in the Chesses' kitchen, he closed the windows and left the pilot light on. The glue exploded; and pursuant to its homeowner's policy American States found itself having to indemnify the Chesses for some $27,000 in additional damage to their house.

American States and Hixon brought this lawsuit in a federal district court in Indiana against Sherwin-Williams. Since American States and Sherwin-Williams are corporate citizens of different states and the amount in controversy between them exceeds $10,-000 (it is $27,000, the sum that American States had to pay the Chesses because of the explosion), American States' claim is clearly within the federal diversity jurisdiction. 28 U.S.C. § 1332(a), (c). Hixon and Sherwin-Williams are also citizens of different states, but Hixon's claim is for less than $10,000. The district court, though aware of a lurking jurisdictional problem with Hixon's claim, allowed it to be tried along with American States' claim. At the close of the plaintiffs' evidence the defendant moved for a directed verdict. The district court granted the motion and dismissed the complaint on the merits. This appeal followed.

We consider first whether the district court had jurisdiction over Hixon's claim. The plaintiffs' counsel conceded at trial that the claim had never been worth more than $900. We find it hard to see how Hixon could have suffered any loss at all, but he claims to have lost some time from his regular work when he helped American States investigate the cause of the explosion. However that may be, it is clear that his claim was nowhere near the jurisdictional minimum. This is not a case where a plaintiff in good faith claims damages in excess of $10,000, but because he either fails to establish liability or fails to establish damages in the amount claimed the actual judgment is less than $10,000, and perhaps is zero. In such a case the jurisdiction of the federal court is not divested retroactively. Otherwise whenever a plaintiff in a diversity action lost on the merits his complaint would have to be dismissed for want of jurisdiction, allowing him to start over in state court, and there would be no decisions on the merits in diversity cases that plaintiffs lost. But Hixon never had a good-faith expectation of obtaining the statutory minimum, and in such a case dismissal for want of federal jurisdiction normally is mandatory. See, e.g., *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir. 1982).

The wrinkle here, however, is that Hixon's claim for less than $10,000 was joined with American States' claim for more than $10,000. This raises the question whether the doctrine of pendent jurisdiction allowed the district court to adjudicate Hixon's claim even though the claim would not have been within the federal jurisdiction if sued on alone.

▪ Pendent jurisdiction usually refers to the case where a plaintiff having a claim based on federal law joins with it a closely related state-law claim against the same defendant but without an independent federal jurisdictional basis. Considerations of judicial economy have been held to justify the federal court's assertion of jurisdiction over the state-law claim, though retention is not mandatory: the court can, and should, decline to adjudicate the state-law claim, and remit the plaintiff to his remedies in the state courts, if the claim is on balance more suitable for adjudication in the state court than in the federal court. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

In the present case, the plaintiff over whose claim the federal court had unquestioned jurisdiction, American States, did not present a federal question at all, but was in federal court solely by virtue of the diversity jurisdiction. And American States did not ask the federal court to consider some related claim that it had against the defendant. Instead, another claimant, Hixon, wanted to piggyback on American States' federal lawsuit in order to bring a state-law claim against the same defendant which he could not have brought in federal court but for the fortuity of American States' suit. Nevertheless, a number of federal courts, by analogy to pendent claim jurisdiction, will assert pendent jurisdiction over a party whose only claim is based on state law and is not within the diversity jurisdiction because it is for less than the jurisdictional minimum. See, e.g., *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 816–17 (8th Cir. 1969). Pendent party jurisdiction may have other applications as well, but we are concerned in this case only with its use in circumventing the amount in controversy requirement of the diversity jurisdiction. We limit our holding accordingly.

There is no doubt that economies can be realized in some diversity cases by asserting jurisdiction over a pendent party. Where, as in *Hatridge*, a man has a claim for more than $10,000 for personal injuries and his wife has a claim for less than $10,000 for loss of consortium as a result of those injuries, the consolidation of the claims in a single suit brings about a clear saving in judicial and litigation resources. But this gain comes at the price of impairing the authority of state courts to decide issues of state law. In most pendent party cases—including this one, as we shall see—the addition of another party injects into the litigation one or more additional issues of state law that the federal court would not have had to decide if it had refused to allow the new party to join the suit. Even with respect to common issues, if the pendent claimant were denied a federal forum the state court would have the opportunity to decide those issues itself; pendent party jurisdiction deprives it of this opportunity.

To all this it may be replied that the balance between competing values was struck by *Gibbs* in favor of federal jurisdiction. But there is an important difference between pendent claim and pendent party jurisdiction. The federal-question jurisdiction is designed to give the federal claimant a federal forum, and pendent claim jurisdiction makes that forum a more attractive one by allowing him to join related state-law claims and save the expense of a second lawsuit. But in a pendent party case, by definition (at least by the limited definition that is all we are concerned with in this case), there is no federal-question claimant; there is only a diversity claimant, who may not even be a member of the class intended to be protected by the diversity jurisdiction. American States' decision to sue in federal court could not have been motivated by fear that a state court of Indiana might be prejudiced against it as a nonresident corporation suing an Indiana resident; the defendant is also a nonresident.

This court rejected the concept of pendent party jurisdiction in *Hampton v. City of Chicago*, 484 F.2d 602, 611 (7th Cir. 1973). But we hesitate to rest our decision in this case solely on *Hampton*, because *Hampton* based rejection of the pendent party concept solely on an earlier Seventh Circuit decision, *Wojtas v. Village of Niles*, 334 F.2d 797 (7th Cir. 1964), which antedated the Supreme Court's decision in *Gibbs*. Before *Gibbs*, the pendent jurisdiction of the federal courts had been defined too narrowly to support pendent party jurisdiction. It was the expansion of the concept of pendent jurisdiction in *Gibbs* that led courts such as the Eighth Circuit in *Hatridge* to recognize pendent party jurisdiction. This court's decision in *Hampton* did not address the possible bearing of *Gibbs* on the continued authority of *Wojtas*.

■ But while we are willing to reexamine the authority of *Hampton* in the light both of *Gibbs* and of decisions in other circuits, such as *Hatridge*, that recognize pendent party jurisdiction, our reexamination persuades us that *Hampton* was decided correctly. Apart from our reluctance to expand federal jurisdiction over state-law claims further than required by clear con-

gressional mandate or compelling considerations of judicial economy, we think the Supreme Court has settled the question in favor of the result in *Hampton*. In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), four named plaintiffs had brought a diversity suit on behalf of themselves and 200 other property owners complaining about pollution by the defendant. Each of the named plaintiffs had a claim worth more than $10,000 but there was no showing that the other members of the class did. The Court ordered the claims of the other class members dismissed for want of federal jurisdiction. It cited "the usual rule that a federal district court can assume jurisdiction over only those plaintiffs presenting claims exceeding the $10,000 minimum specified in § 1332," and a pre-*Gibbs* case, *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939), which had so held. 414 U.S. at 299, 295, 94 S.Ct. at 511, 509. Although the Court did not discuss pendent jurisdiction as a possible basis for an exception to the "usual rule"—its precise holding was that Rule 23 of the Federal Rules of Civil Procedure (class actions) did not justify an exception—the Court could hardly have been unaware of the arguments based on pendent jurisdiction, given the many references to ancillary jurisdiction in the dissenting opinion. See 414 U.S. at 305–09, 94 S.Ct. at 513–516. The judicial economies that the dissenting Justices pointed to in support of asserting jurisdiction over the class members despite their failure to meet the amount in controversy requirement did not persuade the Court in construing the class-action powers of the federal courts; presumably they would not persuade the Court in construing their pendent jurisdiction. *Zahn* has been interpreted as a rejection of pendent party jurisdiction. See, e.g., *Alco Financial Services, Inc. v. Treasure Island Motor Inn, Inc.*, 82 F.R.D. 735 (N.D.Ill. 1979); Currie, *Pendent Parties*, 45 U.Chi.L. Rev. 753 (1978). We adopt that reading and reaffirm *Hampton* : a pendent party must meet the amount in controversy requirement of the diversity jurisdiction.

■ But if we are wrong there is an alternative ground for our jurisdictional holding. The assumption of pendent jurisdiction in a particular case is discretionary, see, e.g., *Moor v. County of Alameda*, 411 U.S. 693, 716, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973), and in this case the sound exercise of discretion would have required the district judge to dismiss Hixon's claim. That claim was too tiny to warrant a federal district court's taking upon itself the decision of a possibly difficult issue of Indiana law which, as we shall see, was not presented by American States' claim; the truth is that Hixon's claim belonged in small-claims court. Moreover, since Hixon was a resident of Indiana the policy underlying the diversity jurisdiction—the protection of nonresidents from prejudice in the local courts—was inapplicable to him.

■ We come at last to the merits of American States' claim against Sherwin-Williams. Benkovich was an independent contractor rather than an employee of Sherwin-Williams, and at common law a principal is not liable for the torts of his independent contractors; respondeat superior (employer liability for the torts committed by its employees in furtherance of their employment) is inapplicable. See, e.g., *Ryan v. Curran*, 64 Ind. 345, 354 (1878). In an age when tort law is dominated by the search for the deep pocket, which Benkovich does not have, the common law rule may seem an anachronism; on the other hand, since by definition an independent contractor, unlike an employee, is an agent the details of whose work are not supervised by his principal, making the principal liable for the torts of his independent contractors would have little positive effect on the amount of care taken by them. But we need not take sides in the policy debate. The Indiana courts, explicitly adopting an accident-prevention rather than deep-pocket approach to the question, have decided—whether rightly or wrongly is not our business—to retain the independent-contractor rule in full force. See, e.g., *Smith v. P. & B. Corp.*, 386 N.E.2d 1232, 1235 (Ind.App.1979); *Cummings v. Hoosier Marine Properties, Inc.*, 173 Ind.App. 372, 380–81, 391, 363 N.E.2d 1266, 1272, 1277 (1977).

■ This case is not within the exception to the rule for inherently hazardous activi-

**1010**

ties. See, e.g., *Denneau v. Indiana & Mich. Elec. Co.*, 150 Ind.App. 615, 620, 277 N.E.2d 8, 12 (1972). The more hazardous an activity is, the higher is the cost-justified level of care; and if it is hazardous enough, the principal should take his own precautions even though he does not supervise the details of the independent contractor's work. But there is nothing hazardous about laying a linoleum floor. It becomes so only if the installer misuses one of the inputs, the glue. This kind of hazard is present in almost all construction work and does not make construction a hazardous activity. See, e.g., *Curl v. Bethlehem Steel Corp.*, 390 N.E.2d 709, 711 (Ind.App.1979); and for the application of the principle to facts very like our own, though not by an Indiana court, see *Jennings v. Vincent's Adm'x*, 284 Ky. 614, 145 S.W.2d 537 (1940). If the presence of a hazardous input made the principal liable for the torts of his independent contractors, then if the employee of a building contractor sawed off his finger while repairing a house the owner of the house would be liable, at least if it turned out that the accident had been due to negligence by the contractor. The exception would swallow the rule.

■ A principal is liable, however, for the consequences of negligently failing to select a competent contractor, *Wabash County v. Pearson*, 120 Ind. 426, 429, 22 N.E. 134, 135 (1889); and American States argues that Sherwin-Williams was negligent in failing to ask Benkovich whether he had ever laid plywood on cement. But Benkovich had a good reputation as an installer of linoleum, and Sherwin-Williams had no duty to quiz him concerning the details of his experience.

■ Even if Sherwin-Williams was negligent in selecting Benkovich because he had no experience with this particular type of job, its negligence was not the proximate cause of the accident. The accident resulted from Benkovich's unaccountable failure to read or pay attention to the warnings on the can of glue rather than from his lack of experience in laying this type of floor. Such an accident was no more probable because Benkovich was inexperienced; it was if anything less probable—a novice

might be expected to pay more attention to warnings and directions than an experienced man. Therefore, making Sherwin-Williams liable in this case would not result in fewer accidents of this type. Cf. *City of Greencastle v. Martin*, 74 Ind. 449, 457–58 (1881); *Hale v. Peabody Coal Co.*, 168 Ind. App. 336, 343, 343 N.E.2d 316, 322 (1976).

■ The final issue is whether Sherwin-Williams breached an implied or express warranty to American States that it would arrange a successful installation of the new linoleum floor. Indiana confines liability for personal injury or property damage under warranty theory to cases where the plaintiff is in privity of contract with the defendant. See, e.g., *Lane v. Barringer*, 407 N.E.2d 1173, 1175 (Ind.App. 1980). There was no privity of contract between American States and Sherwin-Williams. Sherwin-Williams' contract was with Hixon and there is no evidence that it even knew that American States had an interest in the repair of the Chesses' kitchen floor.

■ American States argues that it was a third-party beneficiary of the contract between Sherwin-Williams and Hixon. The argument is a transparent effort to evade the privity requirement; if it prevailed, the requirement would be meaningless. In any event, since there is no evidence that Sherwin-Williams intended to assume, or was compensated directly or indirectly for assuming, liabilities to anyone other than Hixon for failure to perform the contract, American States was not a third-party beneficiary under Indiana law. See, e.g., *Reed v. Adams Steel & Wire Works*, 57 Ind.App. 259, 106 N.E. 882 (1914).

If anyone breached a warranty to American States, it was Hixon, whom American States hired to repair the floor. One might have thought, therefore, that he would have been joined as a defendant rather than allowed to join as a plaintiff. Apparently American States did not sue Hixon because it was his liability insurer. This fortuity conferred no rights on American States against Sherwin-Williams.

Since Hixon should have been dismissed from the case, we need not decide what

rights he might have had against Sherwin-Williams on a warranty theory.

The judgment of the district court must be modified to dismiss Hixon's claim for want of federal jurisdiction, and as so modified it is affirmed.

Modified and Affirmed.