Nereida MARCANO, individually and on behalf of herself and all others similarly situated, and Ramiro Provencio, individually, Plaintiffs,

v.

NORTHWESTERN CHRYSLER–PLYMOUTH SALES, INC., a Delaware corporation, and Chrysler Credit Corporation, a Delaware corporation, Defendants.

No. 82 C 1632.

United States District Court,
N.D. Illinois, E.D.

Nov. 10, 1982.

---

Alan J. Koslow, Chicago, Ill., for plaintiffs.

Alan I. Becker, Bowles, Becker & Levine, Ltd., Chicago, Ill., for defendant Chrysler Credit.

Sam Tenenbaum, David Erhert, Becker & Tenenbaum, Chicago, Ill., for defendant Northwestern.

## OPINION

BUA, District Judge.

Before the Court is a case involving claims under the Federal Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1631 and 1639 and Regulation Z, and certain common law claims allegedly arising from the same set of facts. Count I of the complaint of plaintiff Marcano sets forth a claim on behalf of herself and all others similarly situated against defendants Northwestern Chrysler-Plymouth Sales, Inc. ("Northwestern") and Chrysler Credit Corporation ("Chrysler Credit") for violations of TILA and Regulation Z. Insofar as the TILA claim is concerned, plaintiff has requested certification as a class action.[1] The remaining counts assert common law claims against Northwestern for fraud, false imprisonment, and conversion. It is asserted that the Court has pendent jurisdiction over these claims. Provencio joins Marcano as plaintiff in the fraud and false imprisonment claims.

Defendants have filed motions to dismiss requesting the Court to refuse to certify the class and to dismiss the TILA count for failure to state a claim. Defendant Northwestern has also asked the Court to decline pendent jurisdiction over the common law claims or to at least decline pendent jurisdiction over the claims of plaintiff Provencio. In the alternative, defendant Northwestern asserts that the common law claims should be dismissed for failure to state a claim. For the reasons stated herein, the Court denies defendant Northwestern's motion to dismiss the TILA claims of plaintiff Marcano and denies Northwestern's motion to dismiss Marcano's pendent state claims relating to fraud and conversion. The Court grants the motion to dismiss the claim of false imprisonment. Northwestern's motion to dismiss plaintiff Provencio is granted as is the motion to dismiss defendant Chrysler Credit.

The facts as alleged in the pleadings reveal that on July 25, 1981, Marcano entered into a written agreement with Northwestern for the purchase of an automobile. At that time, Marcano paid Northwestern $500 as a down payment and Northwestern represented that it would procure financing through Chrysler Credit. Chrysler Credit approved the financing agreement but said final acceptance would require a down payment of $1,500. When, on August 1, 1981, Marcano was advised that an additional $1,000 would be required, she informed Northwestern that she did not possess such funds. Northwestern then agreed to loan Marcano $500 and to finance the other $500 through an unknown internal procedure and Marcano took possession of the automobile. As to this side loan, Marcano agreed to pay Northwestern $25 per week beginning on September 1, until paid in full. The agreement was later modified to require the payment of $100 per month. Notwithstanding this arrangement, however, Northwestern failed to send the contract to Chrysler Credit, rendering the automobile unfinanced.

On September 26, 1981, Northwestern, realizing that the vehicle was unfinanced, entered into a new contract with Marcano for the purchase of the vehicle. This contract was approved by Chrysler Credit. According to plaintiff Marcano, however, this contract failed to disclose the cash price, the down payment amount, the difference between the cash price and the down payment credited and the terms of the side loan from Northwestern to Marcano on the loan to cover the down payment. In addition, Marcano never received a copy of this contract. Finally, Northwestern failed to send the contract to Chrysler Credit, again leaving the automobile unfinanced.

On January 8, 1982, Marcano and Northwestern entered into yet another contract relating to the financing of the automobile. This contract was submitted to Chrysler Credit and accepted. According to plain-

---

**1.** The issue over certification of the action as a class action will not be dealt with in this opin- ion as the parties are, at this time, still in the process of briefing the issue.

tiff, however, the contract fails to properly disclose the down payment amount, the unpaid balance, and the amount financed as well as any terms relating to the side loan made for the down payment. Plaintiff claims to have paid $925 in down payment, while the January 8 contract reflects that only $900 was so paid, thus causing a discrepancy as to all the amounts noted above. Northwestern refused to return the difference and plaintiff asserts that defendant Northwestern considered the money to be "interest." In addition, the January 8 contract contained different terms, including a higher interest rate, than the two prior agreements.

The signing of the January 8 agreement was preceded by an incident out of which the common law claims asserted in this lawsuit arose. On January 5, Marcano, being late in making a payment on the side loan, was requested to come to defendant Northwestern's place of business. Along with plaintiff Provencio, she drove to the dealership where she was informed by Northwestern's President, Mr. Greene, that he would repossess the automobile if the $100 payment was not made. As Marcano did not have the required funds, Provencio agreed to make the payment on Marcano's behalf on the condition that Greene would not repossess the car. After accepting the money, Greene asked Marcano for the keys to the car, allegedly so that he could inspect it for damage. She acquiesced, but on receiving the keys, Greene locked the car and kept the keys, rendering the car and its contents inaccessible to the plaintiffs.[2] Having no way to get home, the plaintiffs remained at the dealership from 2:30 P.M. to 7:30 P.M. when a Northwestern employee drove them back. It was to recover possession of the auto that Marcano returned to the dealership on January 8, on which date she signed the final contract.

## TILA—DEFENDANT NORTHWESTERN

■ It is asserted by defendant Northwestern that plaintiff's amended complaint fails to state a claim under the Truth in Lending Act.[3] Section 1631 of the TILA requires a creditor to disclose clearly and conspicuously to the debtor certain information as required by the Act, including the terms of a loan. It is alleged that the terms of the side loan given to finance the down payment were not disclosed to plaintiff Marcano beyond merely the amount which she was required to pay per week or per month. It does not appear that Marcano was ever informed as to the rate of interest or any service charge which she was being assessed. Furthermore, none of the terms of the side loan was ever incorporated into any of the three installment agreements. The amended complaint thus appears to state a claim under Section 1631.

■ If, as plaintiff alleges, Northwestern did not give to the plaintiff duplicates of the first and second installment loan agreements, Northwestern stands in violation of Regulation Z, § 226.8(a), 15 U.S.C.A. foll. § 1700. This provision requires that a "creditor furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made...." Northwestern's motion to dismiss the TILA claims must therefore be denied.

## TILA—DEFENDANT CHRYSLER CREDIT

The adequacy of the TILA claim against Chrysler Credit is not so apparent. As a preliminary matter, failure to furnish a duplicate of the agreement is alleged only against Northwestern. Marcano's complaint against Chrysler Credit concerns only the failure to disclose the terms of the down payment side loan made in connection with the three installment sales transactions. The plaintiff's theory is that, because the

---

**2.** According to Marcano, the contents of the car included her purse, house keys and medicine for her child.

**3.** TILA was amended by Pub.L. 96–221, Title VI, Mar. 31, 1980. The Act as written prior to these amendments, however, applies to violations occurring before October 1, 1982, and thus will govern this case.

undisclosed side loan financed part of the down payment, and because the down payment was an item listed on the installment agreements, the side loan formed a part of the installment agreements yet was not disclosed therein. The plaintiff then asserts that under TILA, Chrysler Credit was a creditor to each of the agreements, and therefore is responsible for failure to disclose the terms of the side loan in each of the installment agreements.[4]

■ It is now well settled that a company, such as Chrysler Credit, that regularly accepts assignments of installment agreements from a retail auto dealer can be considered a creditor under TILA.[5] *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981). However, such a status does not necessarily require that Chrysler Credit is responsible as a creditor or as an assignee under TILA for defects in the first two installment agreements for which Chrysler Credit did not accept assignment or for the side loan made in connection therewith which appears to be at the heart of this dispute.

It is clear that Chrysler Credit cannot be held liable under TILA for defects in the initial transaction. At the time the parties entered into the initial financing agreement on June 25, 1981, the side loan was not yet in existence. Hence Chrysler cannot be held liable for nondisclosure of the terms of the side loan as to the first financing agreement, especially when it is considered that Chrysler Credit refused to accept assignment of that agreement.

Nor did Chrysler Credit accept assignment of the September 26 installment agreement, which was entered into after the undisclosed side loan had been agreed upon. The plaintiff theorizes, however, that Northwestern telephoned Chrysler Credit and that the latter verbally authorized the installment loan. The plaintiff further theorizes that the reason Chrysler Credit never accepted assignment of this agreement is that Northwestern failed to send it to Chrysler Credit. Even assuming that the plaintiff's theories are factually accurate, these theories do not raise Chrysler Credit to status as a creditor liable under TILA. Section 1602(f) of 15 U.S.C. defines creditors as those "who regularly extend, or arrange for the extension of, credit...." Under Regulation Z, " 'Creditor' means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit...." 12 C.F.R. § 226.2(s). While Northwestern may have been trying to arrange for financing, at least as to the September 26 transaction, Chrysler Credit did not extend credit. To have become Marcano's creditor, it would have been necessary for Chrysler to accept assignment of the agreement. This did not take place as to this transaction and Chrysler cannot, therefore, be held liable for failure to disclose.

■ As to the January 8 installment agreement, Chrysler Credit did accept assignment and is a creditor under TILA. However, as to this agreement, no undisclosed side loan was involved. By the time the agreement was made, the amount paid on the side loan was incorporated into the installment agreement as the down payment amount.[6] It is not alleged that the terms of the January 8 installment agreement itself are insufficient, nor is it alleged that Chrysler Credit had knowledge of the dispute between Marcano and Northwestern regarding the amount of the down payment already paid. Without knowledge of the dispute, see footnote 4, *supra,* and without allegations that the January 8 agreement failed to disclose the required terms,

---

4. Regulation Z, § 226.6(d) holds a joint creditor accountable "for making only those disclosures ... which are within his knowledge and the purview of his relationship with the customer...."

5. Certain provisions of TILA limit the liability of assignees. *See, e.g.,* 15 U.S.C. § 1614. The distinction in this case is unimportant. Chrys-

ler Credit contends that as to the first and second transactions it is neither a creditor nor an assignee.

6. This amount was the subject of a dispute between Plaintiff Marcano and Northwestern over the amount of a mere $25. Chrysler Credit was not involved, however, in this dispute.

Chrysler Credit cannot be held liable under TILA. Chrysler Credit's motion to dismiss is therefore granted.

## PENDENT CLAIM JURISDICTION— MARCANO

Also to be decided is whether this Court should assume jurisdiction of Marcano's and Provencio's state common law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), prescribes a two-tiered analysis for determining the propriety of pendent jurisdiction.[7] First, the Court must have the *power* to exercise jurisdiction over the state law claims. Second, assuming judicial power exists, the Court may exercise pendent jurisdiction if in the Court's *discretion* factors of judicial economy, convenience, and fairness to the litigants make it wise to do so.

■ A federal court has the power to hear state claims provided that: (1) there is a substantial federal question; (2) the federal and state claims derive from a common nucleus of operative fact; and (3) the plaintiff would ordinarily "be expected to try" the state and federal claims in one proceeding.[8] 383 U.S. at 725, 86 S.Ct. at 1138. In this case it already has been decided that the plaintiff's federal TILA claim states a cause of action and that it is "substantial." A deeper probe must be made into the existence of the second and third elements of the power inquiry.

What constitutes a "common nucleus of operative fact" does not lend itself to a precise bright-line determination. Some courts have construed the common nucleus of operative fact test as satisfied by substantial transactional identity, *see, e.g.,*

*Kimbrough v. O'Neill*, 523 F.2d 1057, 1062–63 (7th Cir.1975) (Stevens, J., concurring), *aff'd*, 545 F.2d 1059 (1976) (en banc); *Hobby v. Bradley*, 388 F.Supp. 1338 (N.D.Ill. 1975) (same chain of events); while other courts require varying degrees of evidentiary overlap. *See, e.g., Scovill Mfg. Co. v. Dateline Elec. Co.*, 319 F.Supp. 772, 776 (N.D.Ill.1970), *rev'd on other grounds*, 461 F.2d 897 (7th Cir.1972). Under any view, however, the test is satisfied in the case at bar.

■ The thrust of the defendant's argument is that there is no common nucleus of fact because the federal and state causes of action are quite different and the facts pertinent to proving each are dissimilar. It must be remembered, however, that *Gibbs* viewed the requirement that the causes of action must be virtually identical as "unnecessarily grudging," and replaced it with a broader, more common sense approach to pendent jurisdiction. In this case, the common root from which the legal branches of Marcano's complaint spring was her attempt to purchase and finance an automobile. All the branches share a common feature, the side loan, which is involved in each link in the chain of the alleged events that ensued. This Court views this chain of events, from the initial agreement, the side loan and the alleged repossession for failure to make a payment on the loan, to the final agreement, as arising from a common nucleus of operative fact. *See Ford Motor Co. v. Wallenius Lines*, 476 F.Supp. 1362, 1369 (E.D.Va.1979) (sequence of events); *Hobby v. Bradley, supra* (same). With judicial power to entertain both the state and feder-

---

7. A third tier of analysis—implied Congressional intent to withhold federal jurisdiction over particular parties and issues—set forth in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), is irrelevant in this case. The Court is aware of the cases cited by the defendant holding that pendent jurisdiction should be discouraged in TILA cases because otherwise the federal courts may become crowded with state law issues. *See, e.g., Solevo v. Aldens*, 395 F.Supp. 861 (D.Conn.1975). The surface reasoning of these decisions is that Congress in conferring TILA jurisdiction on

federal courts could not have intended such a result. However, the true rationale of this minority line of caselaw seems to be docket-clearing, which this Court views as inimical to the concept of pendent jurisdiction.

8. Although the *Gibbs* opinion does not explicitly state that the second and third requirements call for separate inquiries, courts and commentators regard them as cumulative, "both of which must be satisfied." Wright, Miller & Cooper, Federal Practice and Procedure § 3567 n. 27.

al claims established, this Court, in its discretion, shall exercise that power.

## PENDENT CLAIMS—MARCANO
### Fraud

In Count II of her complaint, plaintiff Marcano sets out a claim for fraud against defendant Northwestern. Northwestern has moved to dismiss this count for failure to state a claim.

The allegations relating to the fraud claim set out the following facts: defendant's President, Mr. Greene, represented to Marcano that he would not repossess the automobile if she made the $100 payment due on the side loan. While plaintiff then made the payment, notwithstanding his representations, Greene proceeded to repossess the car. It is alleged that Marcano relied on Greene's representation in making her payment and that this course of events placed the plaintiff under duress and caused her to sign the third installment agreement as required to regain possession of her automobile.

■ Defendant's motion first asserts that the plaintiff's allegations are insufficient under Fed.R.Civ.P. 9(b) which requires that allegations involving fraud be pleaded with specificity. The Court fails to see how plaintiff's allegations could be more specific in this regard as it appears that all relevant conduct of the parties relating to the alleged fraud is clearly set out. When it is considered that Rule 9(b) must be reconciled with the requirements of Rule 8, Fed.R. Civ.P. 8, which requires a short and concise statement of the claim, *Felton v. Walston & Co., Inc.,* 508 F.2d 577 (2d Cir.1974), the allegations as set out in the amended complaint in the instant case are sufficiently specific to state a claim for fraud.

■ Defendant also contends that plaintiff's amended complaint is fatally flawed in that it relies upon a representation of future conduct as the basis for the charge. As a general rule, recovery is denied where the allegations of fraud are based on a false representation of future conduct. *Polivka v. Worth Dairy, Inc.,* 26 Ill.App.3d 961, 328

N.E.2d 350 (1st Dist.1975). However, a recognized exception exists where the element of knowledge of falsehood or *scienter* is present. *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977). *See, also, Polivka,* 26 Ill.App.3d at 966, 328 N.E.2d 350.

■ Plaintiff's complaint specifically alleged facts constituting the elements which give rise to a claim of fraud. According to the Illinois Supreme Court:

> A misrepresentation in order to constitute a fraud must consist of a statement of material fact, false and known to be so by the party making it, made to induce the party to act, and, in acting, the other party must rely on the truth of the statement.

*Steinberg v. Chicago Medical School,* 69 Ill.2d at 633, 13 Ill.Dec. 699, 371 N.E.2d 634.

Each of the required factors is well pleaded in plaintiff's amended complaint. It appears clear that defendant's statements were false and were made knowing that they were false and that such material statements induced the plaintiff's actions in making the payment and in eventually signing the third financing agreement. As the elements of fraud are thus sufficiently well pleaded, the defendant's motion to dismiss Count II of the amended complaint is denied.

### False Imprisonment

Among her pendent claims, plaintiff Marcano alleges that defendant's repossession of her automobile caused her to be falsely imprisoned. Defendant has moved to dismiss this claim for failure to state a claim and argues that no such confinement in fact existed as plaintiff was free to leave Northwestern's premises at any time. The Court agrees with the assertions of defendant.

■ While it is clear that the modern concept of false imprisonment does not require that the confinement be by iron bars and stone walls, Prosser, Handbook of the Law of Torts § 11 at 42 (4th ed. 1971), it does require the "unlawful restraint of individual liberty or freedom of locomotion against a person's will." *Marcus v. Lieb-*

man, 59 Ill.App.3d 337, 339, 16 Ill.Dec. 613, 59 Ill.App.3d 337 (1st Dist.1978). In order for a false imprisonment to be present, there must be an actual or legal intent to restrain. *Campbell v. Kaczmarek,* 39 Ill. App.3d 465, 350 N.E.2d 97 (1st Dist.1976). Additionally, while actual force is not a requisite to an action for false imprisonment, *Marcus v. Liebman,* as Prosser notes, not every inducement to remain can rise to the level of false imprisonment.

 In the view of this Court, the tort of false imprisonment contemplates an actual or perceived restraint on the freedom of the individual allegedly confined. Such a confinement must be "involuntary." *Fort v. Smith,* 85 Ill.App.3d 479, 40 Ill.Dec. 886, 407 N.E.2d 117 (5th Dist.1980). While the facts as alleged in the instant case appear to show that plaintiff Marcano may have been justified in choosing to remain with the automobile and the personal belongings allegedly contained therein, such a choice does not raise the conduct of defendant to the level of a false imprisonment. Indeed, when plaintiffs Marcano and Provencio chose to leave the premises, they were clearly allowed to do so without interference.

Furthermore, the element of intent required to constitute a false imprisonment, *Campbell v. Kaczmarek,* 39 Ill.App.3d 465, 350 N.E.2d 97 (1st Dist.1976), appears to be lacking from the instant case. While plaintiff's amended complaint reaches the conclusion that defendant's actions were taken "with the intent of restraining plaintiffs," the allegation is without basis in fact. No assertion of fact as to such an allegation is made nor is any allegation made as to the rationale or motivation behind such an asserted intent. The facts as alleged appear to reveal that defendant's intent was not to confine plaintiff personally, but only the automobile and its contents.

It is not and cannot be alleged that plaintiff was at any time restrained from leaving the premises or was even under the impression that any such confinement applied. As in *Martin v. Lincoln Park West Corp.,* 219 F.2d 622 (7th Cir.1955), where it was held that no false imprisonment was present where an individual subject to no real or perceived restraints chose to remain with his personal belongings which had been locked up against his will, the plaintiff in the instant case was not subject to any false imprisonment and cannot therefore make such a claim. Count III of plaintiff's amended complaint is therefore dismissed.

*Conversion*

Count IV of plaintiff's amended complaint alleges wrongful conversion on the part of defendant Northwestern. Defendants' sole argument as to this count is that it fails to meet the particularity requirements of Fed.R.Civ.P. 9(b).

 Fed.R.Civ.P. 9(b) requires that all averments of fraud or mistake be pleaded with specificity. Defendant argues that as the alleged conversion was fraudulent, it falls under the Rule 9(b) requirements. However, the gravamen of the conversion count does not lie in fraud but constitutes a distinct and separate cause of action. Where the gist of a particular claim lies not in fraud but in a totally separate cause of action, the rules imposed by Fed.R.Civ.P. 9(b) relating to the specificity of pleading a fraud claim are not applicable. See *Nuest v. Westinghouse Air Brake Company,* 313 F.Supp. 1228 (S.D.Ill.1970). This rule applies notwithstanding that another aspect of the case, standing alone, may indeed involve fraud. Thus, the fact that a particular act of conversion was fraudulent subjects only the allegations specifically relating to fraud and not the entire case to the Rule 9(b) particularity requirements. Fraud and conversion are two separate torts and, even though present in the same transaction, each is subject to separate pleading rules.

 The Court finds that the facts of the instant case relating to conversion alone are sufficient to state a claim as presently alleged. Therefore, the defendant's motion to dismiss Count IV of plaintiff's amended complaint is denied.

PENDENT PARTY JURISDICTION—
PROVENCIO

 While plaintiff Marcano will be allowed to pursue her state law claims in this Court, it is apparent that the Court cannot assume pendent jurisdiction over plaintiff Provencio's state common law claims. Provencio joins Marcano in two of the state law claims but does not assert a federal claim on her own behalf in the instant case. As plaintiff Provencio is therefore merely a pendent party, federal pendent jurisdiction must be denied.

While *Gibbs v. United Mine Workers, supra,* decided the issue of pendent claim jurisdiction, post *Gibbs* courts are divided on whether the *Gibbs* analysis would apply to pendent party jurisdiction. It would appear that the Seventh Circuit Court of Appeals is of the view that the *Gibbs* analysis does not apply to pendent party jurisdiction.

In *Wojtas v. Village of Niles,* 334 F.2d 797 (7th Cir.1964), decided prior to *Gibbs,* the Court expressly held that it would not recognize pendent party jurisdiction. In a post *Gibbs* decision, *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir.1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1973), the Court of Appeals again broadly stated that pendent party jurisdiction would not be recognized in this Circuit. However, the Court did not discuss *Gibbs,* but instead curtly concluded that *Wojtas* foreclosed the issue. In its most recent decision on the subject, *Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005 (7th Cir.1982), the Seventh Circuit decided to reconsider pendent party jurisdiction in light of *Gibbs* and its progeny. The Court explained:

> This court rejected the concept of pendent party jurisdiction in *[Hampton]* But we hesitate to rest our decision in this case solely on *Hampton,* because *Hampton* based rejection of the pendent party concept solely on an earlier Seventh Circuit decision, *[Wojtas],* which antedated the Supreme Court's decision in *Gibbs.* Before *Gibbs,* the pendent jurisdiction of the federal courts had been defined too narrowly to support pendent party jurisdiction. . . . This court's decision in *Hampton* did not address the possible bearing of *Gibbs* on the continued authority of *Wojtas.*

*Id.* at 1008.

In *Hixon,* one plaintiff, American States Insurance Co., brought a state law claim against the defendant. Federal jurisdiction was based on diversity, and American States' claim met the amount in controversy requirement. The other plaintiff, Hixon, brought a somewhat related state law claim against the same defendant. However, although Hixon and the defendant were of diverse citizenship, Hixon's claim fell far short of the amount in controversy requirement. Hixon argued that he nevertheless should be granted federal jurisdiction as a pendent party to American States' diversity action. The court relied on an analogous case, *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), in rejecting this argument. In *Zahn,* the plaintiffs brought a class action with federal jurisdiction based on diversity. The Supreme Court ruled that the federal court could not assume jurisdiction over the entire class because not all members' claims met the amount in controversy requirement. The plaintiffs in *Hixon* were situated similarly to those in *Zahn.* Two plaintiffs met the requirement of diverse citizenship, but one of them failed the amount in controversy requirement. Thus, the Seventh Circuit Court read *Zahn* as calling for rejection of Hixon's pendent party jurisdiction argument.

It is important to note that in denying pendent party jurisdiction, the Court did not foreclose the possibility of pendent party jurisdiction in other factual circumstances:

> *Pendent party jurisdiction may have other applications* . . ., but we are concerned in this case only with its use in circumventing the amount in controversy requirement of diversity jurisdiction. *We limit our holding accordingly.*

671 F.2d at 1008. (emphasis added).

Notwithstanding this statement, however, it appears that the Court is not per-

suaded that pendent party jurisdiction should be recognized in this Circuit, regardless of the basis of jurisdiction. For instance, at one point in *Hixon,* the Court noted that "our re-examination persuades us that *Hampton* (denying recognition of pendent party jurisdiction where a federal claim formed the basis of jurisdiction) was decided correctly." 671 F.2d at 1008. While the Court realizes that the facts in *Hampton* were somewhat different from those in the case at bar,[9] in light of the above-noted language in *Hixon* as well as the failure of the Seventh Circuit to expressly recognize pendent party jurisdiction elsewhere, the Court is of the belief that pendent party jurisdiction is not a recognized basis of jurisdiction in this circuit. Pendent jurisdiction is a doctrine created "to give a federal claimant a federal forum." *Id.* *See also* Schenkier, "Ensuring Access to Federal Courts: A Revised Rationale for Pendent Jurisdiction," 75 Nw.L. Rev. 245 (1980). As Provencio has no federal claim, she cannot invoke the doctrine of pendent jurisdiction to adjudicate her state claims in this forum.

In sum, the motion to dismiss of defendant Northwestern is hereby denied as to the TILA claim and the pendent common law claims of fraud and conversion. The common law claim of false imprisonment of plaintiff Marcano and all claims of pendent party plaintiff Provencio are, however, hereby dismissed. The Court also grants the motion to dismiss of defendant Chrysler Credit Corporation for failure to state a claim upon which relief can be based.

IT IS SO ORDERED.

9. *Hampton* involved an attempt to include a pendent party defendant whereas the instant litigation concerns a pendent party plaintiff.